385 A.2d 358

### The MINISTERS AND MISSIONARIES BENEFIT BOARD OF the AMERICAN BAPTIST CHURCHES

v.

**Raymond H. GOLDSWORTHY, Appellant,**

**and**

**Elizabeth Goldsworthy, a/k/a Elizabeth Goldsworthy Gordon.**

Superior Court of Pennsylvania.

Argued March 21, 1977.

Decided April 13, 1978.

Randy L. Sebastian, West Chester, for appellant.

Daniel M. Haug, Ambler, submitted a brief for appellee, Ministers and Missionaries Benefit Bd. of the Am. Baptist Churches.

No appearance entered nor brief submitted for appellee, Elizabeth Goldsworthy, a/k/a Elizabeth Goldsworthy Gordon.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

In this appeal,[1] we are asked to decide whether the Act of January 30, 1974, P.L. 13, No. 6, 41 P.S. § 101 *et seq.* or, more specifically, those sections which provide for notice of intention to foreclose[2] and the right to cure a

1. The lower court, in accordance with the Appellate Court Jurisdiction Act, July 31, 1970, P.L. 673, No. 223, Art. V, § 501, 17 P.S. § 211.501, certified this interlocutory appeal. We will consider it on the merits.

2. Section 403 provides as follows:
 (a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.
 (b) Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.
 (c) The written notice shall clearly and conspicuously state:
 (1) The particular obligation or real estate security interest;
 (2) The nature of the default claimed;

default,[3] may be applied in a case where the mortgage was executed *prior* to the effective date of the Act, but the default occurred *subsequent* to that date. The lower court here held that those provisions may not be so applied. We disagree. Nevertheless, for the reasons developed below, we affirm the order of the lower court dismissing appellant's preliminary objections.

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

(d) The notice of intention to foreclose provided in this section shall not be required where the residential mortgage debtor, has abandoned or voluntarily surrendered the property which is the subject of a residential mortgage.

3. Section 404 provides as follows:

(a) Notwithstanding the provisions of any other law, after a notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration, if any, by tendering the amount or performance specified in subsection (b) of this section.

(b) To cure a default under this section, a residential mortgage debtor shall:

(1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence of default and the exercise of an acceleration clause, if any;

(2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;

(3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.

(4) Pay any reasonable late penalty, if provided for in the security document.

The pertinent facts may be summarized as follows: On October 7, 1975, plaintiff-appellee, a nonprofit religious corporation, commenced an action in mortgage foreclosure against defendant-mortgagors, former husband and wife, alleging three separate grounds of default under the terms of a mortgage dated January 24, 1968.[4] Defendant-appel-

(c) Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred.

4. Defendant-mortgagors were divorced on October 31, 1974 and, by deed dated December 2, 1974, conveyed the subject premises to Raymond H. Goldsworthy, appellant herein. They were husband and wife, however, when the parties entered into the mortgage agreement, and defendant-wife was an employee of plaintiff-mortgagee at that time. The mortgage agreement called for interest at four and one-half (4½%) percent and monthly payments of $123.00, but provided as follows:

It is further agreed that if the employment of said Elizabeth G. Goldsworthy by The Ministers and Missionaries Benefit Board of the American Baptist Convention shall terminate for any reason other than her death or disability, (a) the rate of interest payable hereunder shall be increased, as of the date of such termination, to six per cent (6%) per annum, and (b) upon the expiration of the fifth year following the date of such termination the entire principal sum then remaining unpaid and interest shall become due and payable (unless said principal sum has been sooner paid by said regular monthly installments or otherwise).

The instrument also included the following relevant provisions:

[I]t is hereby expressly agreed, that if at any time default shall be made in the payment of any installment of principal or interest as aforesaid, for the space of thirty (30) days after any payment thereof shall fall due . . . then and in such case the whole principal debt aforesaid or so much thereof as shall then remain unpaid shall, at the option of the said Mortgagee or its Successors and Assigns, become due and payable immediately; and payment of said principal debt, or any unpaid installments thereof and all interest thereon, may be enforced and recovered at once. . . .

It is further agreed that the whole of said principal sum and interest shall become due if the undersigned shall abandon or vacate said mortgage premises, or shall convey, lease, mortgage or otherwise sell or encumber in any way their interest in the premises. . . .

In paragraph 7 of its complaint, plaintiff alleged:

7. Since December 2, 1974, the mortgage has been in default by reason, inter alia:

A. Elizabeth Goldsworthy a/k/a Elizabeth Goldsworthy Gordon transferred and conveyed her interest to the mortgaged premises in violation of the terms and conditions of said mortgage;

lant Raymond H. Goldsworthy filed preliminary objections to the complaint alleging, *inter alia*, appellee's failure to comply or to aver compliance with Act No. 6.[5] Appellee filed answers to appellant's preliminary objections and, by order dated August 12, 1976, the lower court dismissed those preliminary objections. However, on September 12, 1976, the lower court amended its prior order so as to permit appellant to file a petition for an interlocutory appeal. We granted appellant's petition on October 12, 1976, and, therefore, the issues raised by his preliminary objections are now properly before us.

■ At the outset, it must be noted that the validity and enforceability of "acceleration" clauses are not here questioned. Generally, a provision in a mortgage agreement according the mortgagee the option to accelerate the maturi-

B. That Elizabeth Goldsworthy a/k/a Elizabeth Goldsworthy Gordon vacated the said mortgaged premises in violation of the terms and conditions of said mortgage;

C. That since May 1, 1975, the defendants have failed to make the monthly payments (which include principal and interest) on the Note accompanying said mortgage and accordingly, under the terms of the mortgage company, the entire principal is due and payable.

5. We will refer to the Act of January 30, 1974 as Act No. 6, rather than the Mortgage Foreclosure Act, as appellant would have us. It is clear from the title of the Act that it was intended to have a much broader purpose:

An Act regulating agreements for the loan or use of money; establishing a maximum lawful interest rate in the Commonwealth; providing for a legal rate of interest; detailing exceptions to the maximum lawful interest rate for residential mortgages and for any loans in the principal amount of more than fifty thousand dollars and federally insured or guaranteed loans and unsecured, uncollateralized loans in excess of thirty-five thousand dollars and business loans in excess of ten thousand dollars; providing protections to debtors to whom loans are made including the provision for disclosure of facts relevant to the making of residential mortgages, providing for notice of intention to foreclose and establishment of a right to cure defaults on residential mortgage obligations, provision for the payment of attorney's fees with regard to residential mortgage obligations and providing for certain interest rates by banks and bank and trust companies; clarifying the substantive law on the filing of and execution on a confessed judgment; prohibiting waiver of provisions of this act, specifying powers and duties of the secretary of banking, and establishing remedies and providing penalties for violations of this act.

ty of the mortgage debt, under certain conditions or upon the happening of specified events, is regarded as a legitimate contractual stipulation. *See* 55 *Am.Jur.2d*, Mortgages, §§ 371–393. If a stated default exists and the option to accelerate is exercised by the mortgagee, the balance on the whole mortgage indebtedness is due and payable; foreclosure proceedings will, therefore, not be premature.

Before the enactment of Act No. 6, the effect of acceleration apparently could not be defeated by the mortgagor's willingness to cure the default; our attention has not been called to, nor does our research disclose, a Pennsylvania appellate decision wherein a mortgagor was permitted to tender only the delinquent payment or performance after the mortgagee declared the entire debt due and payable. Under Act No. 6, however, a mortgagee is precluded from accelerating the maturity date of the mortgage debt and commencing foreclosure proceedings, despite the existence of a default, until after the mortgagor is given notice of the default and his right to cure it.

There can be no doubt that an acceleration clause confers a right upon the mortgagee which, by constitutional provision, is immune to impairment by legislative action.[6] It becomes equally clear that Act No. 6 limits this right of a mortgagee to declare the entire debt due in the event of default. Accordingly, the question to be decided here is whether this change in law constituted an impairment of the obligation of a mortgage contracted prior to the passage of the Act.[7] We conclude, after careful consideration, that it did not.

**6.** The Constitution of the United States provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Article I, Section 10.

Our state Constitution, in Section 17 of Article I, provides that no "law impairing the obligation of contracts . . . shall be passed."

**7.** A case should be decided on constitutional grounds only if necessary. *Lattanzio v. Unemployment Compensation Board of Review*, 461 Pa. 392, 336 A.2d 595 (1975); *Lynch v. Owen J. Roberts School District*, 430 Pa. 461, 244 A.2d 1 (1968). The issue here was phrased in terms of retroactivity and, therefore, would appear to be simply one of statutory construction. Viewing it as such, we would hold

In reaching this conclusion, we quote these enlightening comments of Mr. Justice (later Chief Justice) STERN:

"Any law which enlarges, abridges, or in any manner changes the intention of the parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract [citation omitted]. . . .

"The amount of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution [citation omitted]. . . .

"The remedy, or means of enforcing a contract, is a part of its obligation which the Constitution protects. The Legislature has the power to formulate, alter, and suspend modes of procedure, even as to pre-existing contracts, provided that, under the guise of a procedural statute, it does not deprive a party of any substantial right under the contract [citations omitted]. Any change in procedure which does not supply an alternative remedy, equally adequate and efficacious, in place of that which existed when the contract was made, is violative of the constitutional prohibition. . . .

"[W]e must always bear in mind the distinction between legislation which merely postpones the legal vindication of rights and that which curtails or injuriously affects the rights themselves or the efficacy of the remedies provided for their enforcement. . . ."

that no part of Act No. 6 can be given retroactive application. *See generally, Costa v. Lair*, 241 Pa.Super. 517, 363 A.2d 1313 (1976).

Nevertheless, we must view this case as presenting a question of constitutional law. It is true that the mortgage was executed prior to the effective date of Act No. 6. No attempt, however, is being made here to apply the Act retroactively. Rather, appellant relies on Sections 403 and 404 to prevent foreclosure and avoid acceleration predicated upon a default occurring *after* their effective date. The question to be decided is whether constitutional considerations preclude that reliance.

*Beaver County Building and Loan Association v. Wino-wich*, 323 Pa. 483, 492–494, 187 A. 481, 485–486 (1936).

 Appellee urges us to hold that Act No. 6 abrogates a mortgagee's right to accelerate the mortgage debt and that a substantive right is thereby destroyed. Our reading, however, leads us to conclude that sections 403 and 404 do not alter the ordinary legal effect of clauses of acceleration. Rather, they merely postpone the exercise of the right to accelerate until after the mortgagor has received notice of and an opportunity to cure a default.

 While adequate tender will enable the mortgagor to prevent foreclosure and avoid acceleration, the mortgagee is restored to the same position it would have been in had the default not occurred. Any harm resulting from late payments or performance is cured by the requirement that the mortgagor pay certain fees incurred by the mortgagee. Moreover, to discourage a mortgagor from assuming a casual attitude toward defaults, our Legislature has limited the frequency with which a mortgagor may avail himself of the benefits of the statute. We, therefore, find that application of sections 403 and 404 to mortgages executed prior to the effective date of Act No. 6 will pass constitutional muster.

However, in view of the particular factual situation here presented, our inquiry is not ended. As stated above, Section 403 necessitates that notice be provided the mortgagor before a mortgagee may accelerate the mortgage debt and foreclose on the property. Appellant contends that appellee failed to give notice in compliance with the legal requirements of subsection (c). More specifically, appellant asserts that appellee's letter dated July 28, 1975, did not recite the final four pieces of required information.[8]

8. On October 7, 1975, appellee filed an affidavit of service. This letter was attached thereto and reads, in pertinent part, as follows:
Dear Mr. Goldsworthy:
 Re: Mortgage made by Raymond Goldsworthy and Elizabeth G. Goldsworthy, his wife, dated January 24, 1968, on premises located at North Buck Road, Town of East Brandywine, County of Chester, Pennsylvania

If the only default averred was the failure to pay past due installments of principal and interest, we would agree with appellant that the notice was deficient in that respect. But appellant ignores the fact that appellee, in electing to declare the entire sum due and payable, alleged breaches of two other covenants of the mortgage agreement. There is no dispute that these breaches were independent of any alleged nonpayment and, in themselves, would have authorized appellee to invoke the acceleration clause. The question, therefore, is whether the existence of the additional allegations of default made inclusion of the omitted information unnecessary.

A principal function of Section 403 notice is to make the mortgagor aware of the existence of a default and his right to cure it; he is not to be cursed by an inadvertent delinquency. After receipt of this notice, the mortgagor can prevent foreclosure and avoid acceleration by tendering the appropriate amount or performance specified in Section 404(b). Once the default is cured, a necessary element permitting acceleration and foreclosure is no longer present.

This ability to prevent foreclosure and avoid acceleration, however, is distinctly delimited; it necessarily presupposes the existence of a default curable in the prescribed manner. Therefore, where acceleration is predicated upon a default

Please be advised that the above referred Mortgage is now in default by reason of the following:

(a) That title to the mortgaged premises has been conveyed by way of deed dated December 2, 1974 and recorded in the Office for the Recorder of Deeds in Deed Book R–44, page 141 which is in violation of the terms of the mortgage agreement;

(b) That the required monthly installments have not been made since May 1, 1975.

Therefore, in accordance with the terms and conditions of the mortgage agreement, the remaining principal balance of $17,925.23 along with accrued interest in the amount of $268.88 is now due and owing and must be paid within thirty (30) days from the date of this letter.

I must further advise you that if the above payment is not made within the specified time, we will have no alternative but to institute foreclosure proceedings which will result in additional costs and embarrassment to you.

which cannot be cured, the reason for, and necessity of this information disappears.

 Although Section 404 does not specify the type of default which may be cured, we agree with appellee that this section relates almost exclusively to monetary defaults. Thus to cure a default, subsection (b) directs that the mortgagor "pay or tender" all delinquent sums, together with reasonable fees and costs, and any late penalty, and that the mortgagor "perform any other obligation which he would have been bound to perform . . . ." Clearly, appellant could cure a default resulting from nonpayment of principal and interest. Equally clear, however, is the fact that appellant could not cure a default based on conveyance of the premises in violation of the mortgage agreement. And, if mortgagors have already transferred the premises, any information as to their right to transfer is unnecessary. Based on the foregoing, we conclude that appellee's letter of July 28, 1975 provided all of the information required to comply with Section 403.

 One other point requires only brief discussion. Appellant argues that appellee's complaint failed to aver compliance with Act No. 6. In making this argument, however, appellant has overlooked Pa.R.C.P. 1147, which details the contents of a complaint in foreclosure. A note thereto, added September 22, 1975, provides as follows:

> If the mortgage is a residential mortgage under Act No. 6 of 1974, 41 P.S. 101, the complaint should set forth an averment of compliance with the provisions of Section 403 of Act No. 6, 41 P.S. 403.

We agree with appellee that the foregoing provision is merely precatory. Moreover, appellee's compliance with the notice requirement of Section 403 was shown here by affidavit of service and, therefore, is a matter of record.

Accordingly, we affirm the lower court's order dismissing defendant-appellant's preliminary objections.

SPAETH, J., files a concurring opinion.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

The majority opinion concludes that appellee complied with Act No. 6 so far as pertinent to this case. I agree with that conclusion. Therefore, I do not reach the constitutional question.