482 A.2d 625

NEW HOME FEDERAL SAVINGS AND LOAN ASSOCIA-
TION, formerly Wyomissing New Home Federal Savings
and Loan Association

v.

Joseph A. TRUNK, and Barry J. Tierney and Rosaura
F. Tierney, Appellants.

Superior Court of Pennsylvania.

Argued March 7, 1984.

Filed Sept. 28, 1984.

394

John L. Sampson, Lancaster, for appellants.

Paul K. Allison, Lancaster, for appellees.

Before ROWLEY, MONTEMURO and JOHNSON, JJ.

MONTEMURO, Judge:

This is an appeal from the Judgment of the Court of Common Pleas of Lancaster County granting summary judgment in favor of the plaintiff below, New Home Federal Savings and Loan Association (hereafter New Home), and against defendants below, Joseph A. Trunk, Barry J. Tierney and Rosaura F. Tierney. The action was for the foreclosure of a mortgage on the ground that Trunk breached the mortgage agreement. The pertinent facts are as follows:

On February 23, 1979, Trunk purchased 276 W. Walnut Street, Marietta, Pennsylvania, as his residence for the sum of twenty-eight thousand ($28,000.00) dollars. Trunk paid twenty-eight hundred ($2800.00) dollars toward the purchase price and borrowed the balance, twenty-five thousand, two hundred ($25,200.00) dollars from New Home. As security for the loan, Trunk executed a mortgage in

favor of New Home. The loan was payable over a term of twenty-five (25) years at an interest rate of ten percent (10%) per annum. Trunk lived in his new home until October, 1979, when he moved to Philadelphia to accept a new job.

Trunk attempted to sell his home outright, but he could not find a buyer. He rented the home from October, 1979 to February, 1981. On February 21, 1981, Trunk entered into an Installment Agreement for the Sale of Real Estate with the Tierneys. Under this agreement, Trunk agreed to sell the property to the Tierneys for the sum of thirty-three thousand, nine hundred ($33,900.00) dollars, payable in the following manner: (1) the Tierneys would pay Trunk one thousand ($1000.00) dollars upon the signing of the agreement; (2) two thousand ($2000.00) dollars at settlement, on or before April 1, 1981; (3) the balance of thirty thousand, nine hundred ($30,900.00) dollars, with interest at twelve percent (12%) per annum, payable in monthly installments of three hundred seventeen dollars and eighty-four cents ($317.84) beginning May 1, 1981 and continuing for three years to May 1, 1984; at which time the entire unpaid principal balance would then be due. Upon payment of the principal balance on May 1, 1984, Trunk was to deliver a deed to the Tierneys.

Thereafter, Trunk continued to make timely monthly mortgage payments to New Home, which New Home continued to accept. The Tierneys maintained the property as required and paid all taxes and fire insurance premiums.

On April 29, 1981, after New Home became aware of the installment sale agreement, New Home notified Trunk by letter that he was in default of the mortgage and it intended to foreclose. New Home's letter stated "Your mortgage is in default because you sold the mortgaged property without obtaining our prior written consent." [1]

1.  *17. Transfer of the Property: Assumption.* If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of

The present action was commenced on September 10, 1981. After the close of pleadings, various depositions were taken. New Home then filed a motion for summary judgment, which was countered by a summary judgment motion filed by Trunk and the Tierneys. The issues raised by the parties were thoroughly briefed and argued. On June 23, 1982, the court granted summary judgment in favor of New Home, and against Trunk and the Tierneys. This appeal followed.

Summary judgments are governed by Pa.R.C.P. 1035(b) which provides that a summary judgment will be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Such a disposition is appropriate only in those cases which are clear and free from doubt. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983). "[T]he court must accept as true all well pleaded facts in the non-moving party's pleading, giving the non-moving party the benefit of all reasonable inferences to be drawn there-

a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof.

from." *Brophy v. Philadelphia Newspapers, Inc.*, 281 Pa.Super. 588, 596, 422 A.2d 625, 630 (1980). The burden of showing there is no genuine issue of material fact and that there is entitlement to judgment as a matter of law is on the moving party. *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977).

The appellants raise several grounds upon which they assert that the trial court's judgment was in error. After careful review of the record of the lower court proceedings, we find these allegations to be without merit.

Initially, we will address the appellants' assertion that the due-on-sale clause in the mortgage agreement is invalid as an unreasonable restraint on alienation. It is specifically asserted that the installment sale agreement, which was found to violate the due-on-sale clause, did not impair New Home's security, and that New Home's only motivation for enforcing the clause was to reinvest the loaned funds at a higher rate of interest. The appellants' argument parallels an argument pursued to a successful conclusion in the California Courts. *See Wellenkamp v. Bank of America*, 21 Cal.3d 943, 148 Cal.Rptr. 379, 582 P.2d 970 (1978); *Tucker v. Lassen Savings and Loan Association*, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974).

In *Tucker*, a case entailing essentially the same facts as those herein, the court concluded that an executory conveyance via an installment sales agreement transferred an equitable interest in the property; that the transfer of the equitable interest violated the due-on-sale clause in the mortgage; but that the due-on-sale clause was an unreasonable restraint on alienation. The court expressly rejected the lender's argument that its interest in maintaining its portfolio at current interest rates justified any restraint on alienation resulting from enforcement of the due-on-sale clause upon execution of an installment land contract.

The *Tucker* doctrine reached its zenith when the California Supreme Court in *Wellenkamp v. Bank of America, supra*, extended it from installment land contracts to outright sales. The *Wellenkamp* court, applying the reason-

ing utilized in *Tucker*, concluded that the due-on-sale clause, which was "legitimately designed ... to protect against impairment to the lender's security that is shown to result from a transfer of title ..." *Wellenkamp, supra*, at 952, 148 Cal.Rptr. at 385, 582 P.2d at 976, could not be used as a device to maintain its investment portfolio at current interest rates.

The appellants invite us to apply the principles of *Tucker* and *Wellenkamp* to the facts of the present case. They point out that in this Commonwealth a restraint on the alienation of property will be enforced *only* if it is reasonable and limited. *Lauderbaugh v. Williams*, 409 Pa. 351, 186 A.2d 39 (1962). They contend that a due-on-sale clause, enforced only to maintain investment portfolios at high interest rates, and not to prevent the impairment of security, is not a reasonable and limited restraint on alienation.

New Home counters with several arguments. It asserts that the due-on-sale clause is not an unreasonable restraint on alienation as defined under both Pennsylvania law, *Lauderbaugh v. Williams, supra*, and the *Restatement of Property* § 406 (1944). *See also, Ministers & Missionaries Benefit Board v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978). *Accord, Lipps v. First American Service Corp.*, 223 Va. 131, 286 S.E.2d 215 (1982). It further seeks to differentiate *Tucker* and *Wellenkamp* on the basis that those decisions were based in part on a California statute forbidding unreasonable restraints on alienation. Finally, New Home asserts that the doctrine of federal preemption precludes this court from holding that the due-on-sale clause is an unreasonable restraint on alienation. This final assertion is based on the decision of the United States Supreme Court in *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).[2] Certainly, prior to *de la Cuesta*, this

---

**2.** The appellants assert that the issue of federal preemption is not properly before this court inasmuch as it was not raised by the parties below. However, we disagree with appellants' conclusion, despite the trial court's declaration that, "[n]one of the parties addressed the issue of Federal preemption in their briefs or at oral argument." Lower

issue was one of substantial disagreement. *See, id.* at 151 n. 9, 102 S.Ct. at 3021 n. 9.

The decision in *de la Cuesta,* handed down five days after the trial court's decision in the present action, specifically held that a due-on-sale clause, identical to the one in issue herein, was enforceable by federal savings and loan associations and that any State law to the contrary was preempted by the regulation of the Federal Home Loan Bank Board (FHLBB). The FHLBB, an independent federal regulatory agency vested with the authority to administer the Home Owners Loan Act of 1933, 48 Stat. 128, as amended 12 U.S.C. § 1461 *et seq.,* is empowered to prescribe rules and regulations for the "organization, incorporation, examination, operation and regulation of associations to be known as 'Federal Savings and Loan Associations.'" 12 U.S.C. § 1464(a).

Pursuant to its statutory authority, the FHLBB promulgated a regulation in 1976 governing due-on-sale clause. 12 C.F.R. § 545.11(f) (1980) *recodified* 12 C.F.R. § 545.8–3(f) (1982), which states in relevant part:

> [A federal savings and loan] association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instrument whereby the association may, at its option, declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided in ... this section ..., exercise by the association of such option (hereafter called a due-on-sale clause) shall be exclusively governed

Court Opinion, at 25, n. 11. In fact, the issue was presented to the lower court, albeit indirectly. Cases cited by both the appellants and New Home discuss and-or rely on the preemption doctrine. New Home also attached cases to its brief in support of its motion for summary judgment which discuss federal preemption. Finally, we note that despite its disavowal, the trial court decided in favor of New Home on this issue principally because it found that federal law prevailed over inconsistent State law. In doing so, the lower court relied on Federal cases which had applied the preemption doctrine.

by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

This regulation was held to preempt conflicting state restrictions on the due-on-sale practices of federal savings and loan associations based, in part, on the FHLBB's declaration of intent in the "preamble accompanying final publication of the due-on-sale regulation ... that, the due-on-sale practices of federal savings and loans be governed 'exclusively by Federal law.' ... '[F]ederal associations shall not be bound by or subject to any conflicting State law which imposes ... different due-on-sale requirements" *Id.* at 147, 102 S.Ct. at 3019.

■ All parties agree that New Home is a federal savings and loan association within the purview of the FHLBB, and subject to its rules and regulations. Those regulations require that the mortgage instrument evidencing the security interest be enforced according to its terms. The Supreme Court's decision in *de la Cuesta* makes the FHLBB's regulations paramount over any inconsistent state laws which might derogate from the terms of the mortgage. This court is thereby precluded from holding that a due-on-sale clause in a mortgage instrument evidencing a mortgage given to a federal savings and loan is invalid as an unreasonable restraint on alienation.

We do not decide, inasmuch as the question is not before us, whether a due-on-sale clause would be found invalid in another case where the federal regulation was not applicable; that is where a federal savings and loan was not involved. That decision must be left until another day.

■ The appellant also asserts that the due-on-sale clause is unenforcible as a contract of adhesion. This assertion is one which pits the terms of the mortgage instrument against the laws of this Commonwealth. Thus, it is evident that once again the doctrine of federal preemption prevents us from derogating from the terms of the mortgage. The appellants further assert that the determination of whether the due-on-sale clause is a contract of

adhesion is a question of fact which will preclude the entry of summary judgment. While the question of whether a contract of adhesion is present here may be a question of fact, *Commonwealth v. Monumental Properties, Inc.*, 10 Pa.Commw. 596, 314 A.2d 333 (1973), *aff'd in part and rev'd in part*, 459 Pa. 450, 329 A.2d 812 (1974), *remand.*, 26 Pa.Commw. 399, 365 A.2d 442 (1976). It is not a question of material fact for the reason that even if a contract of adhesion existed, the doctrine of federal preemption would still prevent this court from finding the clause unenforceable. Consequently, the appellants cannot prevail on this issue.

The appellants argue that the installment sale agreement is "subordinate" to the due-on-sale clause of the mortgage held by New Home; i.e. it falls within exception (a) to the due-on-sale clause (See n. 1 *supra*, at 396) and consequently does not trigger the operation of the due-on-sale clause.

The flaw in the appellants' argument stems from the manner in which they have framed it. They assert that "[t]he executory installment sales agreement created a lien or encumbrance upon the subject property which, being junior to the lien of the mortgage on the same property, is expressly excluded from the due-on-sale clause in this case." Appellants' brief at 5. Their argument that an installment sales agreement merely creates a lien or encumbrance upon the property is based on this court's decision in *Anderson Contracting Co. v. Daugherty*, 274 Pa.Super. 13, 417 A.2d 1227 (1979), *appeal dismissed*, 492 Pa. 630, 425 A.2d 329 (1980). They assert that *Anderson* stands for the proposition that an installment sale agreement is the same as a residential mortgage which is secured by a lien on real property as defined in Act No. 6 of Jan. 30, 1974, P.L. 13, § 101 *et seq.*, 41 P.S. § 101, *et seq.*

In *Anderson*, the vendor under an installment contract for the sale of real estate brought an action in ejectment against the vendee under the contract, alleging failure to make required payments. A judgment was confessed and execution proceedings were initiated. The matter was be-

fore this court on appeal from an order denying the vendee's petition to cure default, to stay execution, and to open or strike the judgment.

The vendee asserted a right to cure his default in accordance with the provision of Act No. 6; especially Section 404 of that Act, 41 P.S. § 404, which provides that a party defaulting on a residential mortgage obligation has until one hour before the commencement of bidding at a judicial sale to cure that default. The court held:

It is our opinion that the rights and remedies provided by Act No. 6, in particular, the cure provisions in Section 404 of the Act, 41 P.S. § 404, should not be denied to a class of Pennsylvania home purchasers solely because this obligation to pay the balance of the purchase price is evidenced and secured by a land installment contract as opposed to some other transaction also designed to create a security interest in real estate.

*Id.*, 274 Pa.Superior Ct. at 22–23, 417 A.2d at 1232.

The scope of the decision in *Anderson* was to define the relationship between a vendor and vendee who contract for the sale of real property via an installment sales agreement; for example, Trunk and the Tierneys. The decision of the court was to equate the relationship of vendor-vendee with that of mortgagee-mortgagor, to equate the installment sale contract with a residential mortgage; and to equate the interest retained by the vendor (legal title) with a "lien or encumbrance." By employing this legal fiction, which the court expressly limited to "the purpose of Act No. 6," *id.*, 274 Pa.Superior Ct. at 19, 22, 417 A.2d at 1230, 1232, the court was able to extend the remedies available to a defaulting residential mortgagor to defaulting vendees under installment sales agreements.

■ However, *Anderson* does not give the appellants relief in the present instance for two reasons. First, *Anderson* does not define the interest transferred to the vendee, rather it defines the interest retained by the vendor.

Consequently, it is inapposite herein where the question to be determined is whether the interest transferred to the Tierneys was a "lien or encumbrance." Second, the *Anderson* court expressly limited the scope of its decision to "the purposes of Act No. 6." Herein, we are interpreting the provisions of a mortgage instrument between New Home and Trunk, not the installment sales agreement between Trunk and the Tierneys. The situations are entirely different. For both of the above-stated reasons we concluded that *Anderson* is inapplicable.

■ The question before us is a narrow one: Is the interest transferred to the Tierneys a "lien or encumbrance?" To resolve that question, it is necessary to examine the Tierneys interest vis-a-vis the entire bundle of rights associated with the ownership of property.

For all intents and purposes, the respective interests of New Home, Trunk and the Tierneys collectively equal the entire bundle of rights in the property. New Home has a mortgage on the property granted to it by Trunk. "A mortgage is in essence a defeasible deed, requiring the grantee [mortgagee] to reconvey the property held as security to the grantor [mortgagor] upon satisfaction of the underlying debt or the fulfillment of established conditions." *Hahnemann Medical College and Hospital of Philadelphia v. Commonwealth*, 52 Pa.Commw. 558, 564, 416 A.2d 604, 607 (1980); *see also, Schwoyer v. Smith*, 388 Pa. 637, 131 A.2d 385 (1957); *Girard Trust Co. v. City of Philadelphia*, 369 Pa. 499, 87 A.2d 277 (1952).

Trunk, as mortgagor "remains the owner of everything not conveyed away by the mortgage," *Peoples-Pittsburgh Trust Co. v. Henshaw*, 141 Pa.Super. 585, 15 A.2d 711, 714 (1940), "He retains the possession, if not in default, and can grant it [away] ..." *Id.* The mortgagor has legal title which is not divested by the grant of a mortgage. *Lunnen v. Hunter*, 348 Pa. 402, 35 A.2d 292 (1944).

In the present case, Trunk transferred an interest to the Tierneys. That interest included the right to immediate possession, use and occupancy of the premise, and the obligation to insure and maintain the premises. The Tierneys also have, subject to the contingency that they make all monthly payments and tender the final balance on May 1, 1984, the right to have legal title to the property conveyed to them. *Cf. Realty Investments, Inc. v. Harris*, 166 Pa.Super. 211, 70 A.2d 427 (1950).

The interest transferred to the Tierneys, therefore, encompasses several rights and obligations, which we conclude are not a "lien or encumbrance," and consequently, the transfer of that interest triggered the due-on-sale clause.

The lower court, in deciding that the interest transferred was not a "lien or encumbrance," relied on *Williams v. First Federal Savings and Loan Association*, 651 F.2d 910 (4th Cir.1981). In *Williams*, a mortgagor, whose mortgage was held by a federal savings and loan association and whose mortgage instrument contained a due-on-sale clause identical to that at issue herein, transferred her residential property by means of an elaborate scheme of transactions which essentially put her property into a trust with herself as trustee. The use of the land was sold by means of a "Contract to Purchase by Assignment the Beneficial Interest in a Land Holding Trust." The mortgagor/trustee retained legal title, the purchasers of the beneficial interest took possession of the property. The *Williams* court held that the beneficial interest transferred by the mortgagor/trustee to the purchasers was not a "lien or encumbrance" in that it was not for the purposes of securing an obligation; rather the beneficial interest was the right to "enjoy the structure as their home." The court held that the complicated maneuverings did not prevent operation of the due-on-sale clause.

Although the present situation is mechanically different, the result is the same. Trunk has transferred a beneficial

property interest to the Tierneys. This interest, as viewed in the context of the full bundle of rights associated with property ownership, is something more than a "lien or encumbrance." The due-on-sale clause prohibits the transfer of property interests by the borrower, except for certain excluded transactions, without the lender's written consent. We therefore hold as a matter of law, that the property rights transferred by an installment sales agreement are not a "lien or encumbrance" for the purposes of paragraph 17, and consequently will trigger the operation of the due-on-sale clause.

The appellants' next contention is that the April 29, 1981, notice of intention to foreclose sent by New Home to Trunk was defective in that it was not in compliance with paragraph 17 and 18 of the mortgage instrument. We will consider this argument in conjunction with appellants' fourth argument that the notice was defective in that it failed to comply with Act. No. 6 of July 30, 1974, P.L. 13 § 101 *et seq.*, 41 P.S. § 101 *et seq.* and specifically Section 403 of that Act, 41 P.S. § 403, setting forth the information required in a notice of intention to foreclose.[3]

**3.** Section 403 states in pertinent part:

(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

. . . . .

(c) The written notice shall clearly and conspicuously state:

(1) The particular obligation or real estate security interests;

(2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

The April 29, 1981 notice sent by New Home was essentially as follows:

This is a notice of default and of our intent to foreclose on your mortgage. Please read all of this notice.

We hold a PROMISSORY NOTE which is signed by you, dated February 23, 1979, in the original principal amount of $25,200.00. We also hold a MORTGAGE ON YOUR HOUSE AT THE ABOVE ADDRESS, securing the Note.

Your mortgage is in default because you have sold the mortgaged property without obtaining our prior written consent as required by the mortgage. We hereby declare that all sums secured by the mortgage are immediately due and payable. The total amount you now owe is $24,647.79.

Payment must be made by CASH, CASHIER'S CHECK, OR CERTIFIED CHECK.

Payment must be made at the office OF New Home Federal Savings and Loan Association at 14 North Sixth Street, Reading, Pennsylvania, or if payment is made within thirty-five (35) days after the date of this letter, by mail addressed to New Home Federal Savings and Loan Association, P.O. Box 37, Reading, Pennsylvania.

If we do not receive the required payment within thirty-five (35) days after the date of this notice, we may without any further notice to you, do any of the following:

1. We may begin legal proceedings to foreclose the mortgage, in which proceedings the Sheriff may sell your house.

2. We may take possession of your property and proceed to have you ejected from the property.

3. We may sue you personally for the said unpaid principal balance and all other sums due under the mortgage.

WARNING: If you pay the amounts due more than thirty-five (35) days after the date of this letter and our lawyers have started legal proceedings, you may have to

pay additional foreclosure expenses, including court costs and attorney's fees.

The thrust of appellants' argument is that the notice was defective because it was sent after, rather than prior to acceleration as required by paragraph 18 of the mortgage instrument.[4] Derivatively, the appellants' argue that the notice also violated 41 P.S. § 403(a) and (c)(2) and (3), in that the notice was sent after acceleration, erroneously stated the nature of the default and did not advise Trunk of his right to cure the alleged default.

■ We note initially that we do not believe that the language of paragraph 18 is dispositive of the notice requirement herein. Paragraph 17 of the mortgage instrument states that upon breach of the due-on-sale clause,

"Lender may, at lender's option, declare all sums secured by this Mortgage to be immediately due and payable.... If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof.[5] Such notice shall provide a period of not less than 30 days from the date the notice is

---

**4.** 18. Acceleration; Remedies. Upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, *Lender prior to acceleration shall mail notice to Borrower as provided by applicable law specifying:* (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date of notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in foreclosure proceedings the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports. (Emphasis added).

**5.** Paragraph 14 sets forth the proper manner by which notice is to be sent.

mailed within which Borrower may pay the sums declared due. *If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof."* (Emphasis added). The remedies permitted by paragraph 18 are judicial foreclosure and the recovery of costs. These remedies must be distinguished from other provisions of paragraph 18 which are directed toward the notice requirements where the Borrower has breached his obligation to pay monies due and other obligations.

Appellants would have us make all of the provisions of paragraph 18 applicable where the Borrower has breached the due-on-sale clause. We decline to do so. In *Village Beer and Beverage Company, Inc. v. Cox,* 327 Pa.Super. 99, 475 A.2d 117 (1984), we stated:

> In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties bearing in mind the objects manifestly to be accomplished. *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 190 A.2d 298 (1963). Where the words of the contract are clear and unambiguous, the intent of the parties must be determined from the agreement itself. *Kennedy v. Erkman,* 389 Pa. 651, 133 A.2d 550 (1957). One part of a contract cannot be so interpreted as to annul another part, but, rather, writings which comprise an agreement must be interpreted as a whole. *Shehadi v. Northeastern National Bank of Pennsylvania,* 474 Pa. 232, 378 A.2d 304 (1977). Ambiguous language in a contract is to be interpreted most strongly against the party who selected the language. *West Penn Realty Co. v. Acme Markets, Inc.,* 224 Pa.Super. 202, 303 A.2d 836 (1973).

*Id.,* 327 Pa.Superior Ct. at 107, 475 A.2d at 121. Herein, there is no ambiguity in the language of either paragraph

17 or 18. Paragraph 17 states that when the Borrower breaches the due-on-sale clause, the Lender may declare all amounts immediately due and payable; and further states that upon the Borrower's failure to pay, the Lender may avail itself of the *remedies* in paragraph 18, without any further notice. Paragraph 18, among its provisions, sets forth various remedies at the Lender's disposal. Paragraph 17 incorporates only these remedies, and not as appellants suggest, the various provisions relating to acceleration and notice.

Our conclusion is buttressed by relevant case law. Paragraph 18 calls for notice to be given in accordance with the applicable law; in this case 41 P.S. § 403. The appellants argue that the notice violated not only the terms of the mortgage instrument, but also Section 403. Again, we must disagree.

In *Ministers and Missionaries Benefit Board of American Baptist Church v. Goldsworthy, supra,* this court held that a notice of intent to foreclose was not violative of Section 403, despite the fact that it lacked certain information required by Section 403(c)(3), (4), (5), and (6). In *Goldsworthy,* the mortgagor had sold the property outright and foreclosure was based on, *inter alia,* a due-on-sale clause. The court stated:

> This ability to prevent foreclosure and avoid acceleration, however, is distinctly delimited; it necessarily presupposes the existence of a default curable in the prescribed manner. Therefore, where acceleration is predicated upon default which cannot be cured, the reason for, and necessity of this information disappears.

Although Section 404 does not specify the type of default which may be cured, we agree with appellee that this section relates almost exclusively to monetary defaults. Thus to cure a default, subsection [404](b) directs that the mortgagor "pay or tender" all delinquent sums, together with reasonable fees and costs, and any late

penalty, and that the mortgagor "perform any other obligation which he would have been bound to perform...." Clearly, appellant could cure a default resulting from nonpayment of principal and interest. Equally clear, however, is the fact that appellant could not cure a default based on conveyance of the premises in violation of the mortgage agreement. And, if mortgagors have already transferred the premises, any information as to their right to transfer is unnecessary. Based on the foregoing, we conclude that appellee's letter of July 28, 1975 provided all of the information required to comply with Section 403.

The appellants attempt to distinguish *Goldsworthy* by pointing out that it involved a direct sale whereas this case involved an installment sale. The appellants assert that where an outright sale has occurred, the default cannot be cured; but where an installment sale has occurred the default could be cured, if, for example, the Tierneys agreed to breach the installment sales agreement. We reject this distinction as being too speculative. *Goldsworthy* makes it clear that Section 403 is applicable where the mortgagor has defaulted on his obligation to pay overdue sums to the mortgagee. That situation is not present herein. The premise of *Goldsworthy* is more applicable herein since the default cannot be cured by Trunk acting alone, but rather requires some action by the Tierneys. This court could hardly sanction a requirement that a Lender advise a Borrower to breach a contract with a third party in order to cure a mortgage default.

Having decided that the appellants' arguments are without merit, the judgment of the lower court is affirmed.

Judgment affirmed.