615 A.2d 326

Lawrence MARRA and Francesca Marra, Appellants,

v.

Kenneth STOCKER, Sheriff of Northampton County, Merchants Bank N.A., Brian Hartman, Robert S. Apgar and Marie E. Apgar, Appellees.

Supreme Court of Pennsylvania.

Submitted April 7, 1992.

Decided Sept. 30, 1992.

188

Gerald M. Barr, Allentown, Jeffrey G. Velander, Easton, for appellants.

John M. Metzger, Allentown, for Merchants Bank, N.A.

Brian M. Monahan, Easton, for Hartman.

Renald S. Baratta, Easton, for Solicitor for Sheriff.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

This appeal involves the question of whether a default of the due-on-sale clause of a mortgage agreement by the residential mortgage debtor excuses compliance with the notice and cure

provisions of Act 6 of 1974[1] by the residential mortgage lender.

The facts of the case are as follows. A mortgage in the amount of $49,000 for property at 704 Mauch Chunk Street, Easton, Northampton County, Pennsylvania, was executed between Appellee, Merchants Bank (the Bank) and Appellees, Robert and Marie Apgar (the Apgars) on November 11, 1982. On June 3, 1985, the Bank mailed to the Apgars a "Notice of Intention to Foreclose" pursuant to Act 6 of 1974; 41 P.S. § 403.[2] The notice stated that the Apgars were in default of monthly payments for the months of March, April and May of 1985 and that unless the default was cured within thirty days, foreclosure proceedings would be commenced.

In addition to being delinquent in mortgage payments, the Apgars were also delinquent in the payment of property taxes and on September 9, 1985, Appellants, Lawrence and Francesca Marra purchased the property at a tax upset sale for $1614.

1. Act of Jan. 30, P.L. 13, No. 6, § 101, imd. effective. As amended 1978, Oct. 5, P.L. 1100, No. 258, § 1, imd. effective; 1978, Oct. 5, P.L. 1127, No. 264, § 1, imd. effective; 1979, April 6, P.L. 15, No. 4 § 1, imd. effective; 41 P.S. § 101 et seq.

2. Act 6 provides as follows:
(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.
* * * * * *
(c) The written notice shall clearly and conspicuously state:
(1) The particular obligation or real estate security interest;
(2) The nature of the default claimed;
(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including which sum of money, if any, must be tendered to cure the default;
(4) The time within which the debtor must cure the default;
(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and
(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.
* * * * * *
41 P.S. § 403.

The property was deeded by the tax claim bureau to the Marras and recorded in Northampton County Deed Book vol. 693 page 707 on December 16, 1985.

During the intervening time between the tax upset sale and the recording of the deed, the Bank, on September 26, 1985, filed an action in mortgage foreclosure against the Apgars in the Northampton County Court of Common Pleas. The Marras, who were not yet record owners of the property, were not named as parties. The ground for default pleaded in the complaint was that the Apgars "were delinquent in payments on account of principal and interest due from and after April 1, 1985".[3]

On March 12, 1986, Lawrence Marra notified the Bank in writing of the Marras' ownership of the property and requested the then present balance due on the mortgage. On May 15, 1986, Mr. Marra forwarded to the Bank a copy of the records of the tax claim bureau in order to verify the Marras' ownership of the property and again requested the then present balance due on the mortgage. The Bank did not respond to either request. On December 22, 1986, a second complaint in mortgage foreclosure was filed by the Bank against the Apgars/defendants and the Marras/terre tenants.[4] This second complaint was not preceded by Act 6 notice of intention to foreclose to the Apgars or the Marras.

The Marras and the Apgars did not answer the complaint nor appear in the action and a default judgement was entered resulting in a court ordered sheriff sale of the property which took place on April 10, 1987. Lawrence Marra was present at the sheriff sale but did not bid on the property. Appellee, Brian Hartman, successfully bid on the property in the

3. The trial court's findings of fact indicate that the Apgars filed a Chapter 7 bankruptcy petition on October 17, 1985. Evidence in the record shows, however, that an involuntary petition under Chapter 7 was filed by the Bank, naming the Apgars as debtors, on that date and that the petition was dismissed on or about August 24, 1986.

4. A terre tenant is "... one who purchases and takes land subject to the existing lien of a mortgage or judgment against a former owner". Black's Law Dictionary, at p. 1642 (4th Ed.1968, citing Pennsylvania law).

amount of $65,400. Hartman deposited ten percent of that amount, $6500, with the sheriff to secure his interest. Financing for remainder of the sale price was arranged between Hartman and the Bank. The closing was set for September 18, 1987.

On September 14, 1987, the Marras filed a petition to set aside the sheriff sale. The Marras alleged that the sheriff sale was null and void because they did not receive a notice of intention to foreclose prior to the commencement of the foreclosure proceedings as required by Act 6. Following a non-jury trial, the court upheld the sheriff sale despite having determined that the Marras were "residential mortgage debtors" under Act 6, and, thus, were entitled to notice. The trial court reasoned that because the property was transferred in violation of the due-on-sale clause of the mortgage,[5] the Marras could not cure the default and thus, "technical compliance" with the notice provisions of Act 6 was not required. In addition, the court determined that since the Marras received actual notice of the foreclosure proceedings by service of the mortgage foreclosure complaint, they were not prejudiced by the lack of "technical compliance" with Act 6. Finally, the court determined that to require "technical compliance" would be unjust to the purchaser at the sheriff sale. The Superior Court affirmed on the same grounds, 389 Pa.Super. 5, 566 A.2d 320. We reverse.

A petition to set aside a sheriff sale is governed by our rules of civil procedure which provide that "[u]pon petition of any party in interest before delivery of the ... sheriff's deed to real property, the court, may upon proper cause shown, set aside the sale and order a resale or enter any other

---

**5.** In the instant case the mortgage has two acceleration provisions. The general acceleration clause (paragraph 18) provides for the lender's option to declare all of the sums secured by the mortgage to be immediately due and payable upon the borrower's breach of any covenant or agreement in the mortgage i.e., the failure to make monthly mortgage payments. The due-on-sale clause (paragraph 17) provides for the lender's option to declare all of the sums secured by the mortgage to be immediately due and payable if, all, or any part of the property or any interest therein is sold or transferred by the borrower without the lender's prior written consent.

order which may be just and proper under the circumstances". Pa.R.Civ.Pro. 3132. In *Doherty v. Adal Corp.*, 437 Pa. 109, 261 A.2d 311 (1970) we held that a petition to set aside a sheriff sale is an equitable proceeding, governed by equitable principles. Appellate review of equitable matters is limited to a determination of whether the lower court committed an error of law or abused its discretion. *Sack v. Feinman*, 489 Pa. 152, 413 A.2d 1059 (1980).[6]

As noted previously, Act 6 requires that the residential mortgage lender give notice to the residential mortgage debtor of its intention to foreclose and the right to cure the default thirty days prior to acceleration, or the commencement of any legal proceedings including mortgage foreclosure. 41 P.S. § 403. A residential mortgage debtor is defined in Act 6 as "a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage *and a successor record owner of the property, if any, who gives notice thereof to the residential mortgage lender."* 41 P.S. § 101 (emphasis added). In this case the Marras were successor record owners of the property on December 16, 1985, when the property was deeded to them and recorded by the tax claim bureau. On March 12, 1986, the Marras notified the Bank of their ownership of the property. Thus, the Marras were residential mortgage debtors and were entitled to Act 6 notice.

The trial court erred in concluding that "technical compliance" with Act 6 was not required in this case because there was a violation of the due-on-sale clause of the mortgage. The trial court based its ruling upon two Superior Court cases: *Ministers & Missionaries Benefit Board v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978); and *New Home Federal Savings & Loan v. Trunk*, 333 Pa.Super. 393, 482 A.2d 625 (1984).

6. In the instant case the trial court erred in applying the law. If the case involved the discretionary power of the trial court in setting aside or refusing to set aside the sheriff sale, the standard of appellate review would be a "clear" or "manifest" abuse of discretion. *See, Commonwealth Trust Co. of Pittsburgh v. Harkins*, 312 Pa. 402, 167 A. 278 (1933); *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970).

In *Goldsworthy* the mortgagor sold the property to a third party in violation of the due-on-sale clause of the mortgage. The Superior Court held that notice of intention to foreclose which did not contain all of the information required by Act 6 was not defective. That court reasoned that § 404 of Act 6 (Right to cure default) [7] applies "almost exclusively to monetary defaults" and that "where acceleration is predicated upon a default which cannot be cured, [i.e. a default of the due-on-sale clause] the reason for, and the necessity of this information [§ 403(c)(3)(4)(5)(6) ] disappears".

This rule in *Goldsworthy* was extended in *Trunk* where the mortgagor executed an installment sale contract with a third party in violation of the due-on-sale clause of the mortgage. In *Trunk* the Superior Court held that the notice requirements of Act 6 applied where the mortgagor defaulted on his obligation to pay overdue sums on the mortgage but not where

7.  **§ 404  Right to cure default**
     (a) Notwithstanding the provisions of any other law, after notice of intention to foreclose has been given pursuant to section 403 of this act, at any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration, if any, by tendering the amount or performance specified in subsection (b) of this section.
     (b) To cure a default under this section, a residential mortgage debtor shall:
       (1) Pay or tender in the form of cash, cashier's check or certified check, all sums which would have been due at the time of payment or tender in the absence o default and the exercise of an acceleration clause, if any;
       (2) Perform any other obligation which he would have been bound to perform in the absence of default or the exercise of an acceleration clause, if any;
       (3) Pay or tender any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclosure as specified in writing by the residential mortgage lender actually incurred to the date of payment.
       (4) Pay any reasonable late penalty, if provided for in the security document.
     (c) Cure of a default pursuant to this section restores the residential mortgage debtor to the same position as if the default had not occurred.
     41 P.S. § 404.

a violation of the due-on-sale clause occurred. That court reasoned that the notice which was given to the residential mortgage debtor after, rather than before, acceleration was not defective because the default could not be cured by the residential mortgage debtor acting alone, but required some action by the third party transferee. *Id.* at 410–11, 482 A.2d at 634.

The Superior Court in the preceding cases has engrafted an artificial exception onto an unambiguous legislative notice requirement. The Statutory Construction Act mandates that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit". 1 Pa.C.S. § 1921(b). Contrary to the Superior Court's interpretation, it is clear that Act 6 notice applies to all defaults, not just monetary; hence, the "*nature* of the default claimed" and "exactly what performance including what sum of money, *if any*, must be tendered to cure the default" must be stated in the notice of intention to foreclose. 41 P.S. § 403(c)(2) and (3) (emphasis added). There is no exception to the notice requirements of Act 6 and to read one into the statute would be to amend it and, thereby, improperly engage in legislating.

Furthermore, we disagree with the lower courts that the Marras were not prejudiced because they received actual notice of the foreclosure proceedings by service of the complaint. Prejudice to the Marras is evident in the interest, court and sheriff costs, attorneys fees, etc., which attached upon the commencement of the mortgage foreclosure action. (For example, the Act provides that the residential mortgage lender may contract for or receive a maximum of $50 on attorney's fees from the residential mortgage debtor prior to the commencement of foreclosure; upon commencement, however, all attorney's fees which are reasonable and actually incurred may be charged to the residential mortgage debtor. [41 P.S. § 406] ). The Marras, as purchasers of property at a tax upset sale, received fee simple title to the property subject to any recorded mortgage. 72 Pa.C.S. § 5860.608 and § 5860.609. The Bank's sole interest in the property was as

security for the payment of the mortgage and compliance with the law (notice provisions of Act 6) in no way adversely affects that security interest. The Bank could not deviate from the clear language of the statute, ie., pick and choose the factual scenario to which the statute would apply.

Finally, contrary to the conclusion of the lower courts, the setting aside of the sheriff sale would not be inequitable to the purchaser at the sale [Hartman]. Appellee, Hartman, bid on the property at the sheriff sale with knowledge of the Marras record ownership. Hartman has not yet paid the purchase price of $65,400, but, instead, deposited with the sheriff ten percent of that amount, or $6500, to secure his interest in the property. Hartman's interest in the property, if any, is subordinate and his money will be readily returned. There is no inequity or prejudice here.

The order of the Superior Court is reversed and the case is remanded to the Northampton County Court of Common Pleas for the entry of an order setting aside the sheriff sale of the property at 704 Mauch Chunk Street held on April 10, 1986.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice.

I dissent. This is not an appeal from a judgment in a mortgage foreclosure action. Thus, the question here is not simply whether the Marras were entitled to notice of the bank's intention to foreclose thirty days in advance of the filing of the complaint. That question of law would be dispositive if the Marras had responded to the mortgage foreclosure complaint by asserting the defect in notice.[1] They did not. Despite having been served with a copy of the foreclosure complaint, the Marras did not appear. The foreclosure pro-

1. I have no quarrel with the majority's interpretation of Act 6. The Marras were clearly "residential mortgage debtors" as defined in the Act, being successor record owners who had given notice to the lender. Thus, they were entitled to notice of the lender's intention to foreclose at least thirty days in advance of the commencement of the foreclosure proceedings. Even if there was nothing the Marras could do to cure the default, by the terms of the Act they were entitled to notice.

ceedings resulted in a judgment against the Apgars, and the sheriff's sale was ordered as a means of executing on the judgment. As in all matters, any questions of law regarding the propriety of the judgment were placed beyond direct review when the judgment became final.[2]

The majority acknowledges that a Petition to Set Aside a Sheriff's Sale is an equitable proceeding governed by equitable principles, but gives scant attention to the effect of this rule.[3] The majority leaps to the conclusion that the common pleas court committed an error of law, inasmuch as the Marras had not received the notice required by Act 6 prior to the foreclosure proceedings. As noted above, however, inquiry into the legal effect of the lack of notice on the judgment in the foreclosure action was precluded when that judgment became final.[4] Although the court might take that lack of notice into

2. It must be noted that the Marras did not file a Petition to Open and/or Strike the Judgment.

3. It is ironic that the majority cites *Doherty v. Adal Corporation*, 437 Pa. 109, 261 A.2d 311 (1970), in acknowledging the equitable nature of petition to set aside a sheriff's sale. In that case, the mortgagor sought to set aside a sheriff's sale on grounds that the mortgagee had violated the local rule by sending notice of the entry of judgment and impending sheriff's sale to the mortgaged premises and not to the mortgagor's home. This Court affirmed the lower court's refusal to set aside the sale. We noted that the mortgagor had visited the premises and seen that the locks had been changed and improvements had been made, yet did not file suit until approximately three months after the sale. "It was surely within the power of the court to withhold relief on the basis that the appellant had unclean hands in attempting to sit back and await the completion of the improvements and then profit from the alleged failure to give proper notice." *Id.* at 112, 261 A.2d at 313.

   If it is within a court's equitable power to refuse to set aside a sheriff's sale where the allegation is that there was a defect in notice *of the sale*, it is certainly within the court's equitable power to refuse to set aside a sale where the defect in notice preceded *the judgment*, and it is clear that the party seeking to set aside the sale had actual notice of the foreclosure proceedings, the judgment, the sheriff's sale, and the fact that the sale had been made, yet waited until a month after the sheriff's sale to file the petition to set aside.

4. In at least one federal case, it has been held that the notice required by Act 6 is a jurisdictional prerequisite to suit such that failure to give notice deprives the court of subject matter jurisdiction. See *Main Line Federal Savings & Loan Association v. Joyce*, 632 F.Supp. 9 (E.D.Pa. 1986). In that case, the court granted a motion to dismiss the foreclosure action, removed to the federal court by the Department of

account in weighing the equities of setting aside the sheriff's sale, the majority errs in holding that the lack of notice as a matter of law requires the sale to be set aside. This result is especially anomalous given the fact that the judgment remains of record.

Because I find that the common pleas court acted within its discretion in denying the Marras' Petition, and the Superior Court properly affirmed, I would affirm the Order of the Superior Court.

Housing and Urban Development, which had been named as an additional defendant, citing to an unreported decision of the Philadelphia Common Pleas Court, *Delaware Valley Savings & Loan Association v. Mullin,* No. 3150, November Term, 1984 (C.P.Phila. Dec. 17, 1985).

Whatever the validity of this holding, which has never been adopted by an appellate court of this jurisdiction, it is significant that the assertion of defective notice was made in the foreclosure proceeding itself, and thus the case never proceeded to judgment.