J-A30019-17

2018 PA Super 141

| | | |
|---|---|---|
| EDELLA JOHNSON (A/K/A EDELLA ROBINSON A/K/A EDELLA ROBINSON JOHNSON), ERIC JOHNSON, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED FORMER AND CURRENT HOMEOWNERS IN PENNSYLVANIA. | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | No. 359 WDA 2017 |
| v. | : : : | |
| PHELAN HALLINAN & SCHMIEG, LLP | : | |

Appeal from the Order February 6, 2017
In the Court of Common Pleas of Allegheny County Civil Division at No(s):
GD-12-005395

BEFORE:  BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

OPINION BY BOWES, J.:                                    **FILED JUNE 1, 2018**

EdElla Johnson (a/k/a EdElla Robinson a/k/a EdElla Robinson Johnson) and Eric Johnson, individually and on behalf of other similarly-situated former and current homeowners in Pennsylvania (collectively "the Johnsons"), appeal from the February 6, 2017 order sustaining the preliminary objections in the nature of a demurrer filed by Phelan Hallinan & Schmieg, LLP ("Phelan").  We affirm.

The certified record reveals the following.  On May 23, 2002, the Johnsons executed a mortgage and associated promissory note in the

amount of $74,000. The mortgage was secured by property located at 636 Collins Avenue, Pittsburgh, Allegheny County.[1] That instrument was duly delivered, recorded, and subsequently assigned to the Bank of New York Mellon Trust Company ("Mellon").

In December 2008, the Johnsons defaulted on the mortgage. On March 31, 2009, Mellon, through its counsel, Phelan, filed a complaint in mortgage foreclosure. In the complaint, Mellon asserted, *inter alia*, that the Johnsons owed $1,300 in attorney fees. After a non-jury trial, the trial court found in favor of Mellon. The Johnsons appealed that decision, and this Court affirmed. ***Bank of New York Mellon Trust Co., Nat'l Ass'n v. Johnson***, 170 A.3d 1261 (Pa.Super. 2017) (unpublished memorandum).

On March 23, 2012, while the foreclosure action was pending, the Johnsons initiated the instant class action against Phelan. In their complaint, the Johnsons alleged, *inter alia*, that Phelan violated section 406 of the Pennsylvania Loan Interest and Protection Law, 41 P.S. §§ 101 *et seq.* ("Act 6"), by pursuing and obtaining an award in the mortgage foreclosure

_____

[1] The note was executed solely by Mr. Johnson. The mortgage was executed by both Mr. and Mrs. Johnson.

action of attorney fees that were not actually incurred.[2]  The Johnsons argued that the same harm had been suffered by other former and current Pennsylvania homeowners against whom Phelan had filed foreclosure complaints.  In reliance on section 502 of Act 6,[3] which provides remedies

---

[2] Article IV of Act 6 contains the statute's protective provisions.  Section 406 of the Act limits the attorney's fees that a "residential mortgage lender" may recover from a "residential mortgage debtor," and provides as follows:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> (1)  Reasonable fees for services included in actual settlement costs.
>
> (2)  Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
>
> (3)  Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 P.S. § 406.

[3] Article V of Act 6 provides remedies to "residential mortgage debtors" who have been charged excessive costs and fees.  Section 502 of the Act provides, in relevant part: "a person who . . . has paid charges prohibited or in excess of those allowed by this act . . .  may recover triple the amount of such excess . . .  charges in a suit against the person who has collected such excess . . . charges . . . .."  41 P.S. § 502.

for violations of section 406, the Johnsons claimed that they and other similarly-situated mortgagors were entitled to treble damages for excess attorney fees assessed by Phelan. Phelan filed preliminary objections in the nature of a demurrer, contending that section 406 applies solely to "residential mortgage lenders," and not to their foreclosure counsel. On May 2, 2012, the trial court sustained Phelan's preliminary objections, and consolidated the matter for appeal with another case raising similar issues, *Glover v. Udren Law Offices, P.C.*, docketed in the Allegheny County Court of Common Pleas at GD-11-18015.

In the consolidated appeal, this Court affirmed the trial court's order, and determined that a "residential mortgage debtor" can only maintain a cause of action for a violation of section 406 against a "residential mortgage lender," and not against their foreclosure counsel. *Glover v. Udren Law Offices, P.C.*, 92 A.2d 24, 28 (Pa.Super. 2014). Subsequently, the Pennsylvania Supreme Court reversed, holding that foreclosure counsel constituted a "person" for purposes of section 502, and, thus, "a borrower may recover under [s]ection 502 from any entity — not solely the residential mortgage lender — that collects excessive attorney's fees in connection with a foreclosure." *Glover v. Udren Law Offices, P.C.*, 139 A.3d 195, 200 (Pa. 2016). However, the High Court offered no opinion regarding the term "collected," as used in section 502, and remanded the matter for further proceedings. *Id*. at 201.

On remand, Phelan again filed preliminary objections in the nature of a demurrer. However, for the first time, it asserted that the Johnsons were barred from pursuing relief under Act 6 because their $74,000 mortgage did not qualify as a "residential mortgage" under section 101 of the Act, as their mortgage exceeded the $50,000 statutory limit in effect at the time it was executed in 2002.[4] The Johnson's maintained that the court should apply the version of section 101 in effect in 2009, at the time the foreclosure action was commenced, which raised the limit for a "residential mortgage from $50,000 to $217,873.[5] On February 6, 2017, the trial court sustained Phelan's preliminary objections on the basis that the version of section 101 in effect at the time the mortgage was executed was controlling, and the Johnsons were precluded from bringing an action against Phelan under Act 6

---

[4] Section 101 of Act 6 provides all of the definitions through which Act 6 is interpreted. In 2002, when the Johnsons executed their mortgage, section 101 defined a "residential mortgage," in pertinent part, as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon property located in this Commonwealth[.]" 41 P.S. § 101 (as amended April 6, 1979, effective until September 7, 2008).

[5] In 2008, section 101 was amended, and the term "residential mortgage" was redefined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon property located in this Commonwealth[.]" 41 P.S. § 101 (as amended September 8, 2008). The amended statute defined "base figure" as "two hundred seventeen thousand eight hundred seventy-three dollars ($217,873), as adjusted annually for inflation by the department through notice published in the Pennsylvania Bulletin." *Id*.

because their mortgage was not a "residential mortgage" under the Act. In so finding, the trial court determined that, when the legislature amended section 101 in 2008, it did not manifest an intent that the amendment apply retroactively. **See** Trial Court Opinion, 2/6/17, at 2. The trial court observed that this conclusion was supported by the reasoning employed in two federal district court cases, **Murphy v. Bank of America, N.A.**, 2016 WL 1020969 (E.D. Pa., March 14, 2016),[6] and **Trunzo v. Citi Mortg.**, 43 F.Supp.3d 517 (W.D. Pa. 2014),[7] which it found persuasive. **See** Trial Court Opinion, 2/6/17, at 2.

The Johnsons filed a timely notice of appeal. The trial court did not order the Johnsons to file a Rule 1925(b) concise statement of errors complained of on appeal. However, the court authored a Rule 1925(a) opinion relying on the reasoning it employed in its February 6, 2017 opinion and order. This matter is now ready for our review.

---

[6] In **Murphy**, the United States District Court for the Eastern District of Pennsylvania held that a mortgage executed in 2006 for $53,200 was not a "residential mortgage" under Act 6, because the 2008 amendment to the Act did not apply retroactively. In so ruling, the district court determined that because "the Pennsylvania General Assembly made no clear and manifest intention to make the 2008 Act 6 amendments retroactive, we must apply the definition of 'residential mortgage' as it existed in 2006." **Murphy**, **supra** at *5-7.

[7] In **Trunzo**, the United States District Court for the Western District of Pennsylvania held that a mortgage executed in 2007 for $69,900 was not a "residential mortgage" under Act 6, because the 2008 amendment to the Act did not apply retroactively. **Trunzo**, **supra** at 535-37.

The Johnsons raise five questions for our consideration:

1. Did the prior decisions of the Pennsylvania appellate courts, and the Pennsylvania agencies that were delegated by the Legislature to regulate Act 6, as amended in 2008[,] erroneous[ly] interpreted [sic] the statutory language of new Act 6?

2. Did the lower court err when it concluded that a district court decision discussing considerably different issues under Act 6 enacted in 1974, as amended, with respect to quite different loan transactions[,] constitute error as a matter of law?

3. Did the lower court err in holding that the general rule that contracts cannot be regulated apply [sic] to the contracts of highly regulated banks engaged in mortgage financing?

4. Did the lower court err in holding that the general rule that the attorney fee terms of a contract cannot be regulated although the Pennsylvania Supreme Court held that, because an attorney has no vested rights in the attorney fee terms, they can be regulated?

5. Did the lower court err when it failed to follow Supreme [C]ourt's earlier mandate and remand in [**Glover**, **supra**]?

Appellants' brief at 2.[8]

Our scope and standard of review following a trial court's ruling on preliminary objections in the nature of a demurrer is well settled:

Our standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine

---

[8] Notably, the issues raised in the Johnsons' statement of the questions involved do not correspond to the headings included in their brief. Moreover, the fifth issue identified in the statement is not addressed in their brief. Therefore, it is waived on appeal. **See** Pa.R.A.P. 2119(a) (stating that the parties' briefs must include a discussion of each question raised on appeal and a citation of authorities as are deemed pertinent).

whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super. 2011) (internal citation omitted).

Moreover, this matter requires us to interpret certain provisions of Act 6. As statutory interpretation is a question of law, our standard of review is *de novo* and our scope of review is plenary. *See e.g., Roverano v. John Crane, Inc.*, 177 A.3d 892, 903 (Pa.Super. 2017).

The Johnsons contend that the trial court erred by applying the version of section 101 in effect at the time their mortgage was executed in 2002, rather than the version of section 101 in effect at the time the foreclosure action was initiated in 2009. Because the prior version of section 101 had been repealed and replaced, they claim the trial court was required to apply the amended terms of section 101. They further claim that nothing in the 2008 amendment indicates an intent by the legislature that its terms should not apply retroactively to mortgages executed prior to its effective date, and

- 8 -

maintain that the absence of such language indicates an intention that the 2008 amendment apply to all foreclosure actions upon its effective date. Appellant's brief at 13-14.

In support of their position, the Johnsons highlight the protective provisions contained in sections 403, 404, 406, and 407 of Act 6, which utilize the term "residential mortgage" in concert with the commencement of a foreclosure action, and claim that these provisions suggest that the effective date of the amendment need only precede the commencement of foreclosure proceedings. They further note that section 405, which prohibits prepayment penalties, specifically exempts mortgages entered into prior to the effective date of the amendment, and provides "[r]esidential mortgage obligations **contracted for on or after the effective date of this act** may be prepaid without penalty or other charge for such prepayment at any time before the end of the period of the loan." Appellants' brief at 15 (citing 41 P.S. § 405) (emphasis in original). The Johnsons assert that the inclusion of this language in section 405 supports their argument that the legislature could have included provisions explicitly prohibiting retroactive application in other sections of the Act, such as section 406, but declined to do so.

The Johnsons also challenge the trial court's reliance on **Murphy**, **supra**, and **Trunzo**, **supra**, on the basis that those cases applied federal

decisional law that did not involve foreclosure actions.[9] The Johnsons further claim that the amendment to section 101 should apply retroactively because it does not affect any substantive or contractual rights. Finally, the Johnsons argue that the trial court's interpretation of Act 6 fails to effectuate the Act's remedial purpose, and "would leave an enormous number of homeowners without protection under Act 6." Appellants' brief at 24.

The central question presented in this dispute is whether the trial court should have construed Act 6 by employing the definition of "residential mortgage" provided by the version of section 101 in effect at the time the Johnsons executed their mortgage, or the version of section 101 in effect at the time foreclosure proceedings were initiated. Under the version in effect in 2002, the Johnsons' $74,000 mortgage exceeded the $50,000 limit imposed by Act 6, and hence did not constitute a "residential mortgage" subject to the Act's provisions. Conversely, if the 2008 version controls, the Johnsons' $74,000 mortgage qualifies as a "residential mortgage" under the increased $217,873 limit of Act 6, thereby permitting the Johnsons to pursue a cause of action against Phelan under section 406 for excessive attorney's fees.

---

[9] The Johnsons take issue with the district courts' reliance on **In re Harris-Penna**, 446 B.R. 178 (Bankr.E.D.Pa. 2009), and **In re Grayboyes**, 2006 WL 437546 (E.D.Pa. Feb. 22, 2006), for the proposition that, in determining whether Act 6 applies, courts look to the principal amount set at the time the mortgage transaction took place.

Initially, we turn to the Statutory Construction Act for guidance. When conducting statutory interpretation, "our object is to ascertain the Legislature's intent, giving effect to all of the relevant statutory provisions." **Glover**, **supra** at 199 (citing 1 Pa.C.S. § 1921(a)). "Generally, a statute's plain language provides the best indication of legislative intent." **Roverano**, **supra** at 903 (citation omitted). However, we are also mindful that the Pennsylvania legislature has expressly prohibited retroactive application of statutory provisions unless it has clearly and manifestly provided for such application. **See** 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). Additionally, the legislature has clarified that amendments to statutory provisions do not become effective until the date of their enactment:

> Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and **the new provisions shall be construed as effective only from the date when the amendment became effective**.

1 Pa.C.S. § 1953 (emphasis added). Thus, Pennsylvania recognizes a presumption against retroactive application of laws amending statutes.

Notwithstanding the general rule, a statute may be applied retroactively where it is merely procedural and does not alter any

- 11 -

substantive rights. ***See Morabito's Auto Sales v. Commonwealth Dep't of Transp.***, 715 A.2d 384, 386 (Pa. 1998). "In general terms, substantive laws are those which affect rights, while procedural laws are those which address methods by which rights are enforced. The demarcation between substantive and procedural laws is, however, at times shadowy and difficult to determine." ***Id***. (internal citations omitted). "A substantive right is implicated when the retroactive application of a statute imposes new legal burdens on past transactions." ***Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Weigand)***, 764 A.2d 663, 666 (Pa.Cmwlth. 2000) (citation omitted).[10] Conversely, "procedural statutes establish the method for enforcing a right, but have no bearing on whether a claimant has a legal entitlement to relief under the facts as they exist in the particular case." ***Id.*** (citation omitted).

Additionally, the contracts clauses of the United States and Pennsylvania Constitutions protect contracts freely entered into by the parties thereto from subsequent legislative impairment or abridgment. ***First Nat'l Bank of Pennsylvania v. Flanagan***, 528 A.2d 134, 137 (Pa. 1987). As our Supreme Court has noted:

> Any law which enlarges, abridges, or in any manner changes the
> intention of the parties as evidenced by their contract, imposing

---

[10] Although decisions by the Commonwealth Court are not binding on this Court, they may be persuasive. ***See Estate of Brown***, 30 A.3d 1200, 1204 n.2 (Pa.Super. 2011).

conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract[.]

. . . .

The *amount* of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution[.]

***Beaver County Building and Loan Ass'n. v. Winowich****, 187 A. 481, 485 (Pa. 1936) (citations omitted) (emphasis in original).

Here, under the version of section 101 in effect when the Johnsons executed their mortgage in 2002, a "residential mortgage" was defined, in pertinent part, as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon property located in this Commonwealth[.]" 41 P.S. § 101 (as amended April 6, 1979, effective until September 7, 2008).

In 2008, section 101 was amended, and the term "residential mortgage" was redefined as "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon property located in this Commonwealth[.]" 41 P.S. § 101 (as amended September 8, 2008). The amended statute defined "base figure" as "two hundred seventeen thousand eight hundred seventy-three dollars ($217,873), as adjusted annually for

inflation by the department through notice published in the Pennsylvania Bulletin." **Id**.

We are mindful that Act 6 is a remedial statute, which should be liberally construed to effectuate its aims. **See Glover**, **supra** at 200 (noting that Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices). Nevertheless, our review of the 2008 amendment to Act 6 reveals no indication by the General Assembly that the increased monetary limit for "residential mortgages" was "clearly and manifestly" intended to apply retroactively to mortgages executed prior to its effective date. **See** 1 Pa.C.S. § 1926. Accordingly, section 1953 requires that we construe the amendment as taking effect on the date selected by the General Assembly, *i.e.*, September 8, 2008. **See** 1 Pa.C.S. § 1953.

While the Johnsons argue that the 2008 amendment to Act 6 should be applied retroactively because it is merely procedural in nature, and does not affect substantive or contractual rights, we cannot agree with their position. Notably, in 2002 when the Johnsons executed their mortgage, they were not entitled to the protections afforded by Act 6, as their mortgage did not qualify as a "residential mortgage." Therefore, when the Johnsons' mortgage was executed in 2002, their mortgage lender was not subject to the limitations on attorney fees provided by section 406. Nor were the Johnsons afforded any of the rights provided by Act 6, including the right to bring a direct action under section 502, or seek treble damages for

- 14 -

any excess fees charged.  **See Glover**, **supra** at 201 (holding that section 502 "specifically creates a cause of action."). In our view, these are substantive rights not contemplated by the parties at the time the mortgage was executed. Thus, retroactive application of the 2008 amendment would impose new legal burdens on a past transaction. **See Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Weigand)**, **supra**. As the 2008 amendment to section 101 creates legal rights to which the Johnsons were not entitled at the time they executed their mortgage, we conclude that the amendment is substantive in nature, and may not be applied retroactively.

The Johnsons' reliance on **Flanagan**, **supra**, and **Ministers and Missionaries Benefit Board of the American Baptist Churches v. Goldsworthy**, 385 A.2d 358 (Pa.Super. 1978) (overruled by **Marra v. Stocker**, 615 A.2d 326 (Pa. 1992)), is misplaced, as those cases support our determination herein. In **Flanagan**, our Supreme Court considered two amendments to section 101 of Act 6. The first amendment, effective October 5, 1978, altered the definition of "residential mortgage" in a manner that excluded business loans. The second amendment, effective April 6, 1979, restored the definition to its pre-1978 version, which made Act 6 applicable to business loans. Plaintiffs secured a business loan in March 1979, during the period in which Act 6 did not apply to such loans. Notably, the 1979 amendment included language which evidenced a specific intent by the legislature that the amendment should apply retroactively: "This Act

shall take effect immediately and shall be retroactive to and including October 5, 1978." *Flanagan*, *supra*, at 137 (citing 41 P.S. § 101 (as amended April 6, 1979)). Nevertheless, our Supreme Court ruled that the amendment, if applied retroactively, would void the agreement of guaranty securing the loan in question and, therefore, change the intentions of the parties. *Id*. at 138. On this basis, the Court ruled that retroactive application of the amendment "violate[d] the contracts clause and is unconstitutional." *Id*.

The *Flanagan* Court also rejected the appellant's argument that the lender should be estopped from arguing that the amendment did not apply retroactively because it had complied with certain notice requirements imposed by the 1979 amendment. The High Court ruled that the notice requirements in the amendment could be applied retroactively because they were merely procedural in nature. *Flanagan*, *supra* at 138 ("The requirement of notice of the lender's intention to foreclose in § 403 of [Act 6] is . . . a procedural requirement and does not interfere with or deny any substantive rights."). Here, we are not dealing with an amendment which imposes mere notice or disclosure requirements.[11] Rather, we a dealing with

---

[11] For this reason we are unpersuaded by the Johnsons' reference to a 2011 letter from the Pennsylvania Department of Banking and Pennsylvania Housing Finance Agency to entities holding mortgages secured by Pennsylvania real property, notifying them that of the requirement that they comply with Act 6's **notice** requirements.

an amendment which, like the one at issue in *Flanagan*, alters the parties legal rights. Therefore, we find *Flanagan* supports our conclusion that the 2008 amendment to section 101 does not apply retroactively.

In *Ministers and Missionaries*, we considered whether certain notice requirements in Act 6 could be retroactively applied to mortgages executed before the effective date of the Act. Under sections 403 and 404, a residential mortgage lender is precluded from accelerating the maturity date of the mortgage debt and commencing foreclosure proceedings, despite the existence of a default, until after the mortgagor is given notice of the default and his right to cure it. We ruled that retroactive application of the notice requirement did not impair the contractual rights of the mortgage lender because it merely postponed the exercise of its right to accelerate until after the mortgagor had received notice of and opportunity to cure a default. *Ministers and Missionaries*, *supra* at 363.[12] Thus, *Ministers and Missionaries* highlights the principle that, while procedural laws may be applied retroactively, laws that affect the substantive rights of contracting parties may not.

---

[12] In *Ministers and Missionaries*, *supra*, the notice provided by the mortgage lender did not comply with sections 403 and 404. Nevertheless, the court ruled that "where acceleration is predicated upon a default which cannot be cured, the reason for and the necessity of the information [required by Act 6] disappears." *Id*. at 364. In *Marra*, *supra*, our Supreme Court rejected the suggestion in *Ministers and Missionaries* that strict compliance with the notice requirements of section 403 of Act 6 is not mandated. *See Marra*, *supra* at 194.

We therefore conclude that the Johnsons' mortgage is not a residential mortgage protected by Act 6. The mortgage simply did not meet section 101's definition of a "residential mortgage" because the principal amount exceeded the $50,000 limit for residential mortgages in place at the time the transaction was consummated in 2002. The 2008 amendment to Act 6 cannot be retroactively applied to their 2002 mortgage. Since the Johnson's mortgage is not a "residential mortgage" under the Act, they are without a predicate violation of Act 6 for which they can recover under section 502.

We therefore hold that the trial court did not err in sustaining Phelan's preliminary objections in the nature of a demurrer on the basis that the Johnsons were precluded from bringing an action under the Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2018

- 18 -