J-A25019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MTGLQ INVESTORS, L.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIBRO J. CIARMATORI AND MARY | : | |
| JANE CIARMATORI A/K/A  MAY JANE | : | |
| CIARMATORI, THE UNITED STATES | : | No. 501 MDA 2019 |
| OF AMERICA C/O THE UNITED | : | |
| STATES ATTORNEY FOR THE MIDDLE | : | |
| DISTRICT OF PA | : | |
| | : | |
| | : | |
| APPEAL OF: LIBRO J. CIARMATORI | : | |
| AND MARY JANE CIARMATORI A/K/A | : | |
| MAY JANE CIARMATORI | : | |

Appeal from the Order Entered February 28, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
201604377

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED: FEBRUARY 5, 2020**

Libro J. Ciarmatori and Mary Jane a/k/a May Jane Ciarmatori ("the Ciarmatoris") appeal from the order entering summary judgment against them in this mortgage foreclosure action. The Ciarmatoris argue that the mortgagee, Wells Fargo Financial Pennsylvania, Inc. ("Wells Fargo"),[1] failed to provide proper notice under Act 6. We affirm.

---

[1] During the proceedings below, Wells Fargo USA Holdings, Inc. became successor by merger to Wells Fargo Financial Pennsylvania, Inc., and was substituted as plaintiff. For ease of understanding, we refer to both entities as "Wells Fargo." After the Ciarmatoris filed notice of appeal, Wells Fargo

The Ciarmatoris executed a $260,232.01 mortgage with Wells Fargo in 2006. Trial Court Opinion, filed 5/21/19, at 1. In August 2015, Wells Fargo sent Act 6 notice to the Ciarmatoris of its intention to foreclose. *Id.* at 2. Wells Fargo filed a Complaint in foreclosure in October 2015, but discontinued that action in January 2016. *Id.* at 2-3, 4 n.2.

Wells Fargo filed a new Complaint in mortgage foreclosure against the Ciarmatoris in April 2016. *Id.* at 1.[2] The Ciarmatoris filed an Answer and New Matter, arguing that Wells Fargo had not sent notice under Act 6 prior to filing the Complaint. *Id.* at 2. Wells Fargo filed a Motion for Summary Judgment, relying on the Act 6 notice it had sent in 2015, prior to the first foreclosure action. *Id.* at 2. The trial court held the Motion for Summary Judgment in abeyance, and ordered Wells Fargo to send the Ciarmatoris new Act 6 notice. *Id.* at 3.

Wells Fargo sent new Act 6 notice in early May 2017, indicating the Ciarmatoris could cure the default by paying $46,114.38. *Id.* The court stayed action while the Ciarmatoris twice entered, and were twice removed from, a

---

assigned the mortgage to MTGLQ Investors, L.P. ("MTGLQ"), which has been substituted as the appellee. *Id.* at 1 n.1.

[2] The Complaint listed The United States of America as an additional defendant, asserting the federal government had filed tax liens against the property. Complaint at ¶ 12. Wells Fargo and The United States of America later entered into a stipulation that The United States of America was not indebted to Wells Fargo, and that the proceeds of a judicial sale of the Ciarmatoris' property would be distributed to the parties under the state and federal priority lien laws. Stipulation, 10/11/16, at ¶ 3, 5. The United States of America did not otherwise participate in the proceedings below, and has not participated in this appeal.

mortgage foreclosure diversionary program. *Id.* at 3-5. In late February 2019, nearly two years after Wells Fargo had sent new Act 6 notice, the trial court granted Wells Fargo's Motion for Summary Judgment. *Id.* at 5.

The Ciarmatoris appealed, and raise the following issues:

1. Did the Trial Court commit an error of law in granting Wells Fargo Bank's (the "Bank") Motion for Summary Judgment even though the Bank failed to send an Act 6 Notice to Defendants, Libro Ciarmatori and Mary Jane Ciarmatori ("Ciarmatoris"), at least 30 days in advance of the commencement of the instant action as required by Section 403 of Act 6, but relied upon an Act 6 Notice provided to Ciarmatoris before commencing a prior Mortgage Foreclosure action which had been discontinued by the Bank?

2. Did the Trial Court commit an error of law in finding that the Ciarmatoris' mortgage did not qualify as a residential mortgage under Act 6 because the original amount of the mortgage was more than $50,000 even though [Wells Fargo] submitted itself to the authority of Act 6 by sending Act 6 Notices to the [Ciarmatoris] before commencing a mortgage foreclosure action in 2015 and also after the commencement of the mortgage foreclosure action subject to the pending appeal?

Ciarmatoris Br. at 4.

We review an order granting summary judgment for an abuse of discretion or error of law. *Wells Fargo Bank N.A. v. Spivak*, 104 A.3d 7, 10 (Pa.Super. 2014). "[W]e review the evidence in the light most favorable to the non-moving party . . . and resolve all doubts as to the existence of a genuine issue of material fact against the moving party[.]" *Id.* at 11. "Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Am. S. Ins. Co. v. Halbert*, 203 A.3d 223,

226 (Pa.Super. 2019) (quoting **Estate of Agnew v. Ross**, 152 A.3d 247, 259 (Pa. 2017)).

### I. Notice Under Act 6

The Ciarmatoris first argue that an Act 6 foreclosure notice must precede the associated mortgage foreclosure action, and the court therefore erred in allowing Wells Fargo to send Act 6 notice after commencing the second foreclosure action. Ciarmatoris' Br. at 13-15 (citing **JP Morgan Chase Bank N.A. v. Taggart**, 203 A.3d 187 (Pa. 2019) and 41 P.S. § 403(a)). The Ciarmatoris assert Wells Fargo's untimely Act 6 notice "is a nullity as it is in violation of the statutory requirements." **Id.** at 14.

"The Loan Interest and Protection Law, commonly referred to as 'Act 6,' is a consumer protection statute for residential mortgage debtors that provides an extensive program designed to avoid mortgage foreclosures." **Bayview Loan Servicing, LLC v. Lindsay**, 185 A.3d 307, 308 (Pa. 2018) (quotation marks and citations omitted). "In its section 403(a), Act 6 requires a residential mortgage lender to provide at least thirty days' notice of its intent to foreclose on a residential mortgage to the homeowner[.]" **Id.** Notice under Act 6 must alert the mortgagor of his or her right to cure the mortgage default, by what sum of money, and the time within which to do so. **Taggart**, 203 A.3d at 195 (citing 41 P.S. § 403(c)). "A lender may not recycle a stale [Act 6] pre-foreclosure notice that it issued in connection with a prior complaint in mortgage foreclosure." **Id.** at 188.

In its Rule 1925(a) opinion, the trial court explained that under ***Johnson v. Phelan Hallinan & Schmieg, LLP***, 202 A.3d 730 (Pa.Super. 2019), the version of Act 6 that was in effect at the time of the mortgage was executed controls whether Act 6 notice is required. Tr. Ct. Op. at 9. The version of Act 6 that was in effect in 2006, when the Ciarmatoris' executed the mortgage, defined a "residential mortgage" requiring Act 6 notice as an obligation of $50,000 or less. ***Id.*** The court found that as the Ciarmatoris' 2006 mortgage exceeded this amount, it did not qualify as a residential mortgage under the version of Act 6 in place at that time, and Wells Fargo was therefore not required to send notice under Act 6 prior to instituting a foreclosure action. ***Id.*** at 9-10.

We agree that under ***Johnson***, Act 6 does not apply to the Ciarmatoris' mortgage, and thus Wells Fargo was not required to send Act 6 notice. Although the trial court ordered Wells Fargo to send Act 6 notice during the second action, this was, at most, harmless error.

## II. Estoppel

The Ciarmatoris argue that Wells Fargo subjected itself to compliance with Act 6 both by sending Act 6 notice in 2015, prior to the first foreclosure action, and by sending a new Act 6 notice during the second foreclosure action. Ciarmatoris' Br. at 15, 17. According to the Ciarmatoris, the principles of estoppel should preclude Wells Fargo from now arguing that Act 6 does not apply. ***Id.*** at 18. The Ciarmatoris rely on ***Greater Delaware Valley Savings and Loan Association v. Diehl***, 26 Pa. D. & C.3d 571 (C.P. Del. 1982).

There, the trial court held that because the mortgage lender had sent Act 6 notice to defendants, leading them to believe that Act 6 applied, the lender was estopped from arguing in court that Act 6 did not apply. *Diehl*, 26 Pa. D. & C.3d at 574. The Ciarmatoris argue that after receiving Act 6 and Act 91 notice in 2015, they applied for emergency mortgage assistance, and that although their application had been denied, the appeal of the denial was still pending when Wells Fargo filed the Complaint in the second foreclosure action. Ciarmatoris' Br. at 8-9, 18. The Ciarmatoris claim this "prevented [them] from obtaining the emergency mortgage loan assistance available under Act 91." *Id.* at 18.

The Court of Common Pleas' decision in *Diehl* does not control us, and even if it did, it is distinguishable. There, the lender initially complied with Act 6 but later attempted to escape Act 6's requirements by disputing a factual question – whether the property at issue had more than two units. 26 Pa. D. & C.3d at 573. The lender only attempted to do so after the sheriff's sale and when the homeowners were attempting to use the sale proceeds to redeem the foreclosure, pursuant to the provisions of Act 6. The *Diehl* court refused to allow the lender to do so. It explained that the lender had led the homeowners to believe Act 6 applied by sending notice, and only later wanted to repudiate Act 6 "in order to re-invest at a higher interest rate which is against the theory and purpose of the act." *Id.* at 574.

Here, it is undisputed that the mortgage was in an amount more than $50,000, such that the version of Act 6 in effect at the time the Ciarmatoris

entered into their mortgage does not apply. Moreover, the Ciarmatoris have not established that they relied on Wells Fargo's sending and resending of the Act 6 notice to their detriment. Their only claim of prejudice is that Wells Fargo's initiation of the second foreclosure action somehow prevented them from obtaining emergency loan assistance under Act 91, because their appeal of the denial of their prior Act 91 application was still pending.

This is not a claim that they relied on Wells Fargo's implicit assertion that Act 6 applied. Rather, it is a claim that the timing and sequence of events somehow interfered with the Act 91 process. We therefore cannot conclude that Wells Fargo was estopped from arguing that Act 6 did not apply.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/05/2020