IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| EDELLA JOHNSON (A/K/A EDELLA ROBINSON A/K/A EDELLA ROBINSON JOHNSON), ERIC JOHNSON, INDIVIDUALLY AND ON BEHALF OF OTHER SIMILARLY SITUATED FORMER AND CURRENT HOMEOWNERS IN PENNSYLVANIA,<br><br>        Appellants<br><br>        v.<br><br>PHELAN HALLINAN & SCHMIEG, LLP,<br><br>        Appellees | No. 26 WAP 2019<br><br>Appeal from the Order of the Superior Court entered January 8, 2019 at No. 359 WDA 2017, affirming the Order of the Court of Common Pleas of Allegheny County entered February 6, 2017 at No. GD-12-005395.<br><br>SUBMITTED: April 16, 2020 |

**OPINION**

**JUSTICE WECHT**                    **DECIDED: AUGUST 18, 2020**

The Pennsylvania Loan Interest and Protection Law, 41 P.S. §§ 101 *et seq.* ("Act 6" or "the Act") governs residential mortgages within the Commonwealth. When the statute was enacted in 1974, a "residential mortgage" was defined as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less." 41 P.S. § 101 (amended by Act of July 8, 2008, P.L. 824, No. 57, § 1). In 2008, however, the General Assembly amended Act 6's definition of a "residential mortgage" to increase the principal-amount ceiling to $217,873—a base figure that automatically is adjusted for inflation annually. 41 P.S. § 101.

This appeal concerns whether that increased principal-amount ceiling should apply to mortgages that were executed before the 2008 amendment to Act 6. The question for our review is whether the $74,000 mortgage that EdElla and Eric Johnson ("the Johnsons") executed in 2002 should be considered a "residential mortgage" under Act 6 given that, when the Appellants' lender initiated foreclosure proceedings in 2009, the increased principal-amount ceiling had gone into effect. Because we conclude that nothing in the 2008 legislation amending Act 6 demonstrates that the revised figure should apply retroactively, we affirm the order of the Superior Court.

On May 23, 2002, the Johnsons executed a $74,000 mortgage and associated promissory note. The mortgage was secured by property located at 636 Collins Avenue, Pittsburgh, Pennsylvania. The instrument was recorded and later assigned to the Bank of New York Mellon Trust Company ("Mellon").

Six years later, the Johnsons defaulted on their mortgage. In March 2009, Mellon—through its debt-collection counsel Phelan Hallinan & Schmieg, LLP ("Phelan")— filed a complaint in mortgage foreclosure. In that complaint, Phelan included a claim for attorneys' fees of $1,300. Following a non-jury trial, the court entered judgment for Mellon. Trial Court Opinion, 4/7/2016, at 3 ("TCO") (affirmed *Bank of New York Mellon Trust Co., Nat'l Ass'n v. Johnson*, 2017 WL 2304414 (Pa. Super. 2017) (unpublished memorandum)).

In March 2012, while the underlying mortgage foreclosure case was still ongoing, the Johnsons filed the instant class action against Phelan. In their complaint, the Johnsons claimed that Phelan violated Section 406 of Act 6 when it sought to collect from the Johnsons and other similarly situated mortgagors attorneys' fees that Phelan allegedly never incurred. Section 406 of Act 6, which limits the attorneys' fees that a

"residential mortgage lender" may recover from a "residential mortgage debtor," provides as follows:

> With regard to residential mortgages, no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor except as follows:
>
> > (1) Reasonable fees for services included in actual settlement costs.
> >
> > (2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.
> >
> > (3) Prior to commencement of foreclosure or other legal action attorneys' fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act.

41 P.S. § 406. The Johnsons asserted that they (and other members of the class) are entitled to treble damages pursuant to Section 502 of the Act for the excess attorneys' fees that Phelan assessed in violation of Section 406. *See* 41 P.S. § 502 ("A person who . . . has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges[.]").

Phelan filed preliminary objections in the nature of a demurrer. In its main objection, Phelan argued that the limitation on attorney's fees in Section 406 applies only to "residential mortgage lenders," but not to the lender's foreclosure counsel. The trial court sustained Phelan's demurrer, dismissed the Johnsons' complaint, and consolidated the matter for appeal with another Allegheny County case that raised similar issues.

In the consolidated appeal, the Superior Court affirmed the trial court's holding that a "residential mortgage debtor" can only maintain a cause of action for a violation of Section 406 against a "residential mortgage lender," and not against the lender's foreclosure counsel. *See Glover v. Udren Law Offices, P.C.*, 92 A.3d 24, 28 (Pa. Super.

2014), *rev'd*, 139 A.3d 195 (Pa. 2016). On further appeal, this Court reversed. We held that a lender's foreclosure counsel constitutes a "person" for purposes of section 502, and thus "a borrower may recover under Section 502 from any entity—not solely the residential mortgage lender—that collects excessive attorney's fees in connection with a foreclosure." *Glover*, 139 A.3d at 200.

Upon remand, Phelan again filed preliminary objections in the nature of a demurrer. This time, Phelan argued that the Johnsons cannot assert a claim under Act 6 because their $74,000 mortgage does not qualify as a "residential mortgage," and thus did not fall within the scope of Act 6. In this regard, Phelan noted that, when the Johnsons executed their mortgage in 2002, Act 6 defined a "residential mortgage" as "an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less." 41 P.S. §101 (effective until September 7, 2008). Thus, Phelan argued that the protections available to residential mortgagors under Act 6 are unavailable to the Johnsons, since their mortgage amount exceeded the statutory maximum.

The Johnsons, on the other hand, noted that Act 6's definition of "residential mortgage" was redefined in 2008 to mean "an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less," with the "base figure" being set at $217,873, and adjusted annually for inflation. 41 P.S. § 101.[1] The Johnsons therefore argued that the trial court should apply the definition of "residential mortgage"

---

[1] The definition, in its entirety, provides that "'Residential mortgage' means an obligation to pay a sum of money in an original bona fide principal amount of the base figure or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit." 41 P.S. § 101; *see also id.* ("'Base figure' means two hundred seventeen thousand eight hundred seventy-three dollars ($217,873), as adjusted annually for inflation by the department through notice published in the Pennsylvania Bulletin.").

that existed when the mortgage foreclosure action was filed (in 2009), rather than the definition that existed in 2002 (when the Johnsons executed the mortgage). Under the Johnsons' theory, Act 6's treble damage provision and limits on counsel fees would apply to the Johnsons' $74,000 mortgage.

The trial court sustained Phelan's demurrer, holding that the Johnsons were precluded from pursuing relief under Act 6 because their mortgage was not a "residential mortgage" as Act 6 defined that term in 2002. The trial court also concluded that nothing in the 2008 amendments to Act 6 suggests that the legislature intended for the revised definition of a "residential mortgage" to apply retroactively to pre-2008 mortgages. T.C.O., 2/6/2017, at 2. The Johnsons then appealed to the Superior Court.

In a unanimous, published decision, the Superior Court affirmed. *Johnson v. Phelan Hallinan & Schmieg, LLP*, 202 A.3d 730 (Pa. Super. 2019). Citing the Statutory Construction Act, the court noted that there is a presumption against applying statutes retroactively. *Id.* at 737 (citing 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.")). The court also noted that statutory amendments do not become effective until the date of their enactment. *Id.* (quoting 1 Pa.C.S. §1953 ("[P]ortions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions [of an amended statute] shall be construed as effective only from the date when the amendment became effective.")).

Turning to Act 6, the court explained that nothing in the 2008 amendments suggests "that the increased monetary limit for 'residential mortgages' was 'clearly and manifestly' intended to apply retroactively to mortgages executed prior to its effective date." *Id.* (citing 1 Pa.C.S. § 1926). The court conceded that Act 6 is a remedial statute, which should be construed liberally to effectuate its aims. Even so, the panel noted, the

Statutory Construction Act makes clear that courts are bound to construe amendments as taking effect on the date selected by the General Assembly, absent some explicit indication that the legislature intended for the amendment to apply retroactively. For this reason, the court concluded that the Johnsons' mortgage is not a "residential mortgage" for purposes of Act 6 given that "the principal amount exceeded the $50,000 limit for residential mortgages in place at the time the transaction was consummated in 2002." *Id.* at 739. The court therefore held that the trial court did not err in sustaining Phelan's preliminary objections.

The Johnsons then filed a petition for allowance of appeal, which we granted to consider whether the Superior Court correctly held that the Johnsons' mortgage is not a "residential mortgage" for purposes of Act 6.[2]

Because this matter arises from an order sustaining preliminary objections in the nature of a demurrer, our standard of review requires us to determine "whether, on the facts averred, the law says with certainty that no recovery is possible." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 56 (Pa. 2014) (citation and internal quotation marks omitted). Because the underlying decision involves issues of statutory interpretation, we also observe that, in all matters of statutory interpretation, we apply the Statutory Construction Act, which directs us to ascertain and effectuate the intent of the General Assembly. 1 Pa.C.S. § 1921(a). Generally, a statute's plain language provides the best indication of legislative intent. *Pa. Fin. Responsibility Assigned Claims Plan v. English*, 664 A.2d 84, 87 (Pa. 1995) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words."). Only when the words of a statute are

---

[2]     *See* Per Curiam Order, 5/30/2019, at 1 (granting *allocatur* to consider whether "the Superior Court err[ed] in determining the mortgage at issue was not a 'residential mortgage' and that petitioners are therefore not entitled to seek damages pursuant to 41 P.S. §§ 406 and 502").

ambiguous will we resort to other considerations to discern legislative intent. 1 Pa.C.S. § 1921(c).

We agree with the Superior Court that the presumption against finding statutes retroactive—and the General Assembly's explicit instruction that courts should avoid applying legislation retroactively unless the statute clearly and manifestly states otherwise—is controlling here. *See* 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). On the facts averred, the Johnsons' mortgage was not governed by Act 6 when it was executed in 2002, since the total loan amount exceeded the Act's $50,000 ceiling. Given that the Act does not clearly and manifestly state that the 2008 legislation's increased base figure should apply to mortgage contracts that existed prior to the amendment, we discern no basis allowing for application of the updated law to the Johnsons' mortgage. Therefore, the Johnsons' loan does not constitute a "residential mortgage" under Act 6 and thus is not subject to Section 406's limitation on recoverable attorneys' fees.

In an effort to avoid this conclusion, the Johnsons offer three main reasons why they believe that the lower courts erred in applying the version of Act 6 that existed when their mortgage was executed in 2002. The Johnsons argue that the courts below failed to: (1) construe Act 6 as a whole when interpreting Section 406; (2) apply the precept that remedial statutes should be construed liberally; and (3) afford deference to an administrative agency's interpretation of Act 6. We consider each of these arguments in turn.

The Johnsons first assert that the Superior Court interpreted Section 406 in isolation rather than construing Act 6 as a whole. Brief for Johnsons at 22. They note that one other provision of Act 6, Section 405, explicitly applies to "[r]esidential mortgage obligations contracted for *on or after the effective date of this act*[.]" 41 P.S. § 405

(emphasis added). Given this language, the Johnsons argue that, if the General Assembly had intended for Section 406 of the Act to apply only to future mortgages, it similarly would have limited that provision to mortgages contracted for "on or after the effective date of this act." Brief for Johnsons at 10-11. Because no such limitation exists in Section 406, the Johnsons contend that the General Assembly must have intended for it "to be applied to existing loans[.]" *Id.* at 11.

It is true that courts generally should construe statutes as a whole, keeping in mind that the context provided by surrounding statutory provisions often provides vital insights into the legislature's intent. *See Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013) ("In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). This principle is of limited utility here, however, given the already-mentioned presumption that statutes do not apply retroactively absent strong evidence that the legislature so intended. That the General Assembly seems to have opted for a belt-and-suspenders approach in Section 405—explicitly renouncing retroactivity even though it technically did not need to—does not prove that it intended for every other provision of the Act to apply retroactively.[3] Furthermore, Section 405 has not been amended since its enactment in 1974, meaning that it provides limited insight into

---

[3]     Consistent with the Statutory Construction Act's presumption against retroactivity, statutes that are intended to apply retroactively typically contain clear and unambiguous statements to that effect. Rarely does the General Assembly embrace a read-between-the-lines approach of the sort that the Johnsons suggest is present here. *See, e.g.,* Act of May 8, 2020, P.L. 121, No. 18, § 3(2) ("The addition of 23 Pa.C.S. § 6387(a) and (c) shall be retroactive to March 6, 2020."); 62 P.S. § 2992.12 ("This act shall be retroactive to January 1, 2002."); 24 P.S. § 19-1905-C ("This article shall be retroactive to July 1, 1996."); 53 P.S. § 15204 ("This act shall be retroactive to March 15, 1994."); 72 P.S. § 4753-4 ("This act shall be retroactive to August 2, 1990.").

whether the General Assembly, in 2008, intended for the increased principal-amount cutoff to apply to preexisting mortgages.

At its core, the Johnsons' position is that the trial court should have applied the law that existed when Phelan allegedly violated Act 6, *i.e.*, when it sought to collect attorneys' fees in the 2009 foreclosure action. Brief for Johnsons at 19 ("[C]ourts must apply the law prospectively that exists when the violation occurs, *not* when the contract was formed."). And because the 2008 amendment to Act 6 predates the 2009 foreclosure action, the Johnsons insist that they are seeking only "prospective" application of the 2008 law.[4] *Id.* at 8, n.3 ("The Johnsons have only sought prospective application of the [n]ew statute to their existing loan."). We are unpersuaded that the General Assembly wanted courts to assess whether a long-ago-executed mortgage qualifies as a "residential mortgage" only after some later violation of the Act occurs. Indeed, the plain language of Act 6, both before and after the 2008 amendment, specifies that the proper focus is on the amount of the mortgage at the time of origination—or, to use the terminology of Act 6, the "*original* bona fide principal amount" of the mortgage. 41 P.S. § 101 (emphasis added).

Construing Act 6 as a whole, there are other reasons to doubt that the General Assembly intended for the 2008 legislation's increased dollar-value ceiling to apply to pre-2008 mortgages. For one thing, the seemingly random principal-amount ceiling that the General Assembly selected in 2008 ($217,873) roughly corresponds with the 1974 cutoff ($50,000) if it had been adjusted for inflation throughout the intervening thirty-four years.[5]

---

[4]    While the Johnsons claim that they are merely seeking "prospective" application of Act 6, rather than fully "retroactive" application of the law, accepting the Johnsons' argument unquestionably would require that we apply Act 6 to a mortgage that was not governed by the statute when the parties executed it.

[5]    *See CPI Inflation Calculator*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/data/inflation_calculator.htm.

This too suggests that the General Assembly's intent was to modernize and future-proof Act 6, not to apply new rules to pre-existing loans that were never before governed by Act 6. Consistent with this understanding, the 2008 legislation also provides for automatic annual adjustments to account for inflation. 41 P.S. § 101 (defining the "residential mortgage" "base figure" to mean "two hundred seventeen thousand eight hundred seventy-three dollars ($217,873), as adjusted annually for inflation by the department through notice published in the Pennsylvania Bulletin").

Notable also is that Section 406 does not, as the Johnsons suggest, merely govern the procedural aspects of *in rem* foreclosure actions. *See* Brief for Johnsons at 13 (arguing that mortgage lenders have "no vested contractual right under the mortgage with respect to the statutory *in rem* foreclosure process"). Instead, the provision purports to regulate the substantive terms that can be included in residential mortgages in the first instance. 41 P.S. § 406 (providing that "no residential mortgage lender shall *contract for* or receive attorney's fees from a residential mortgage debtor except as follows . . ." (emphasis added)). Other provisions of Act 6 that incorporate the "residential mortgage" terminology similarly impose substantive limits on the contractual terms that can be included in residential mortgages. For example, Section 301 of the Act, which the General Assembly also amended in the 2008 legislation, regulates "the maximum lawful rate of interest for residential mortgages." 41 P.S. § 301(b). Thus, retroactive application of the 2008 definition of a "residential mortgage" would essentially void already agreed upon contractual provisions—a messy state of affairs and one that raises serious constitutional concerns. *See First Nat. Bank of Pa. v. Flanagan*, 528 A.2d 134, 137 (Pa. 1987) ("A later law cannot abridge rights under a prior contract. The only substantive laws in effect when the parties enter into a contract are implicitly incorporated into it.").

Given the absence of an explicit retroactivity provision, and given the far-reaching consequences that would result from applying the revised definition of a "residential mortgage" retroactively, it is perhaps unsurprising that virtually every court that has considered the issue has held that the 2008 amendment to Act 6 applies only to mortgages executed after the amendment's effective date.[6] We find the reasoning of those courts to be persuasive and consistent with our own precedent interpreting Act 6. The Johnsons claim that our decision in *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187 (Pa. 2019) stands for the proposition that Act 6 applies so long as the mortgage in question does not exceed the statutory dollar-value ceiling *when the foreclosure action is filed.* Brief for Johnsons at 26. But the question of whether the 2008 amendment to Act 6 should apply to pre-2008 mortgages was neither presented nor decided in *Taggart. Id.* at 189 (observing that the parties did not dispute that Act 6 applied). Rather, our decision was based upon the meaning of the word "any" in Section 403 of the Act: a provision that requires lenders to provide borrowers notice before commencing a foreclosure action. Unlike our decision today, *Taggart* did not resolve the issue of whether the amended definition of a "residential mortgage" should be applied retroactively.

Next, the Johnsons contend that we should interpret Act 6 liberally, in a way that promotes the remedial purpose of the law. Brief for Johnsons at 34-36; *see Glover*, 139 A.3d at 200 (explaining that "Act 6 is a usury law, designed to protect borrowers against improper mortgage lending practices."). In this regard, the Johnsons assert that the

---

[6] *See, e.g.*, *Murphy v. Bank of Am., N.A.*, 2016 WL 1020969, at *5 (E.D. Pa. 2016) ("Because the legislature did not express a clear and manifest intent to have the 2008 base figure apply to mortgage contracts in existence prior to the amendments, we cannot apply the figure to Plaintiff's contract."); *Trunzo v. Citi Mortg.*, 43 F. Supp. 3d 517, 535 (W.D. Pa. 2014) ("Notwithstanding the 2008 amendment, courts have looked to the bona fide principal amount set at the time of the transaction, and not at a subsequent date, for considering whether a residential mortgage comes under Act 6."); *In re Harris-Pena*, 446 B.R. 178, 187 (Bankr. E.D. Pa. 2009) (applying the pre-2008 $50,000 limit in a case involving a mortgage that originated in 2001).

Superior Court's interpretation of Act 6 "would prohibit the Legislature's ability to regulate foreclosures" and would "leave a significant number of Pennsylvanians unprotected from unscrupulous debt collection foreclosure practices." Brief for Johnsons at 34-35.

There is no question that, under our interpretation of Section 406, fewer mortgages will constitute "residential mortgages" for purposes of Act 6 than under the Johnsons' proposed reading. As we have warned in the past, though, the rule that remedial legislation should be construed liberally does not justify interpreting a statute in a manner that is contrary to the plain and ordinary meaning of the statute's text. *Dental Benefit Providers, Inc. v. Eiseman*, 124 A.3d 1214, 1223 (Pa. 2015) (declining to construe a remedial statute liberally in a manner that would negate its plain language); *see Commonwealth v. Clanton*, 151 A.2d 88, 92 (Pa. 1959) (explaining that the text of a statute "cannot be ignored in pursuit of its spirit even though a broad or liberal construction would obviously protect society . . ."). While we understand the Johnsons' concern that some pre-2008 mortgages (of more than $50,000) will not be covered by Act 6's limitation on recoverable attorneys' fees, we regard that as an inevitable consequence of the Act's plain language, combined with the fact that the dollar-value threshold for a "residential mortgage" remained stagnant for more than three decades. Absent some textual basis to conclude that the legislature intended to apply the 2008 amendment retroactively, we cannot rewrite Act 6 under the guise of interpreting it. *See In re Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 721 (Pa. 2018).

Lastly, the Johnsons argue that the lower courts erred in failing to credit the interpretation of Act 6 offered by the Pennsylvania Department of Banking. The Johnsons note that, in a 2011 letter to lenders who hold mortgages secured by real property located in Pennsylvania, the Pennsylvania Housing Finance Agency ("PHFA") instructed mortgagees that:

After August 27, 2011, mortgagees will be required to issue the notice as provided by Section 403 of the Act of January 30, 1974 (P.L. 13, No. 6) 41 P.S. §403, known as the Loan Interest and Protection Law, for which the Department by regulation has promulgated a model notice that may be found at 10 Pa. Code § 7.4 (the "Act 6 Notice"). In the calendar year 2011, the Act 6 Notice is required before accelerating the maturity of residential mortgage obligations of $221,540 or less, commencing any legal action including mortgage foreclosure to recover under such obligations, or taking possession of any security of the residential mortgage debtor for such residential mortgage obligations.

PHFA Letter, 7/21/2011, at 1.

The Johnsons argue that, because the PHFA has instructed mortgagees to provide pre-foreclosure notice to all borrowers with mortgages below the inflation-adjusted "residential mortgage" ceiling, it must have concluded that the 2008 amendment applies retroactively. *See* 41 P.S. § 403(a) (providing that a residential mortgage lender must provide debtors with notice that it intends to commence foreclosure proceedings). And, in the Johnsons' view, the Superior Court was required to embrace the PHFA's interpretation of Act 6 unless it was "clearly erroneous." Brief for Johnsons at 30 (citing *Harmon v. Unemployment Comp. Bd. of Review*, 207 A.3d 292, 299 (Pa. 2019) (OAJC) ("[A]n interpretation by the agency charged with the administration of a particular law is normally accorded deference, unless clearly erroneous.")).

We conclude that this issue is not properly before us, since the Johnsons failed to raise it in the trial court. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In addition to raising the issue for the first time on appeal, the Johnsons' argument overlooks many of the critical nuances in this evolving area of law. They do not, for example, contend that the Act's definition of a "residential mortgage" is ambiguous such that we should rely upon (or perhaps even defer to) an administrative agency's interpretation of the term. *See* 1 Pa.C.S. § 1921(c)(8) (providing that reviewing courts may consider administrative interpretations of an ambiguous statute). Nor do they acknowledge that the agency's chosen format—issuing

a letter rather than undergoing more formal procedures like notice-and-comment rulemaking—might affect the level of weight that its interpretation should carry. *See United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertise, and to the persuasiveness of the agency's position[.]" (footnotes omitted)).  Most importantly, the Johnsons do not acknowledge that the PHFA's guidance letter, like our holding in *Taggart*, *supra*, specifically relates to Section 403's pre-foreclosure notice provisions.  We emphasize that our decision today is limited to the question presented: whether the Johnsons are entitled to seek damages for an alleged violation of Section 406.  Arguments about whether the Act's notice requirements apply to pre-2008 mortgages of more than $50,000 are beyond the scope of this appeal.

In sum, we hold that the 2008 definition of a "residential mortgage" does not apply retroactively to loans that exceeded Act 6's dollar-value ceiling when they were executed. The trial court therefore correctly dismissed the Johnsons' complaint, which was predicated on the theory that Phelan violated Section 406's limitation on recoverable attorneys' fees.  Accordingly, we affirm the order of the Superior Court.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.